1  Kirk Pasich (CA State Bar No. 94242)
   pasichk@dicksteinshapiro.com
2  Steven P. Inman, II (CA State Bar No. 227748)
   inmans@dicksteinshapiro.com
3  DICKSTEIN SHAPIRO LLP
   2049 Century Park East, Suite 700
4  Los Angeles, CA 90067
   Telephone: (310) 772-8300
5  Facsimile: (310) 772-8301

6  Attorneys for Plaintiffs Midland Credit Management, Inc.;
   Midland Funding, LLC; MRC Receivables Corporation; and
7  Midland Funding NCC-2 Corporation

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12  MIDLAND CREDIT MANAGEMENT,          Case No. 09-CV-2187 H (RBB)
    INC., a Kansas corporation; MIDLAND
13  FUNDING, LLC, a Delaware limited    Hon. Marilyn L. Huff
    liability company; MRC RECEIVABLES
14  CORPORATION, a Delaware             **DECLARATION OF BRIAN
    corporation; and MIDLAND FUNDING    FRARY IN SUPPORT OF
15  NCC-2 CORPORATION, a Delaware       PLAINTIFFS' OPPOSITION TO
    corporation,                        DEFENDANT'S MOTION TO
16                                      TRANSFER VENUE**
              Plaintiffs,
17                                      [Filed concurrently with Plaintiffs'
         vs.                            Opposition to Defendant's Motion to
18                                      Transfer; Plaintiffs' Request for
    TRAUNER, COHEN & THOMAS, LLP,       Judicial Notice in Support of
19  a Georgia limited liability partnership, Opposition to Motion to Transfer
    and Does 1 through 10,              Venue; and Plaintiffs' Evidentiary
20                                      Objections to the Declaration of
              Defendants.              Russell S. Thomas]
21
                                        Date:    December 7, 2009
22                                      Time:    10:30 a.m.
                                        Courtroom: 13
23

24

25

26

27

28

DICKSTEIN
SHAPIRO LLP

                                        Case No. 09-CV-2187 H (RBB)
DECLARATION OF BRIAN FRARY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

1    I, BRIAN FRARY, declare:

2    1.    I am the Assistant Secretary of Plaintiffs Midland Credit Management,

3    Inc., Midland Funding, LLC, MRC Receivables Corporation, and Midland Funding

4    NCC-2 Corporation (collectively "Midland"). I have personal knowledge of the facts

5    stated herein. If called and sworn as a witness, I could and would testify competently

6    to these facts under oath.

7    2.    As part of my responsibilities as Assistant Secretary of Midland, I

8    reviewed and am familiar with the agreements and correspondence between Midland

9    and Defendant, Trauner, Cohen & Thomas ("TCT"). Additionally, as part of my

10    duties, I am responsible for overseeing Midland's litigation against TCT. As part of

11    my oversight of this lawsuit, I have reviewed and am familiar with the pleadings in the

12    lawsuit as well as the allegations in those pleadings.

13    3.    Midland has its principal place of business and headquarters in San

14    Diego, California and collects debts from debtors in California and other states.

15    Midland's debt collection activities are overseen and managed from its headquarters

16    in San Diego, California.

17    4.    In September 2004, Midland retained TCT to render legal services,

18    including filing lawsuits, to collect debts on Midland's behalf.

19    5.    Midland and TCT negotiated and executed the Collection Agreement that

20    Midland and TCT entered into on September 1, 2004 (the "2004 Collection

21    Agreement") from their respective offices in California and Georgia. Attached hereto

22    as Exhibit A is a true and correct copy of the 2004 Collection Agreement.

23    6.    On May 6, 2006, Midland and TCT entered into a second collection

24    agreement (the "2006 Collection Agreement"), which superseded the 2004 Collection

25    Agreement. Midland and TCT negotiated and executed the 2006 Collection

26    Agreement from their respective offices in California and Georgia. Attached hereto as

27    Exhibit B is a true and correct copy of the 2006 Collection Agreement.

28    7.    Pursuant to these Collection Agreements, Midland placed accounts with

DICKSTEIN
SHAPIRO LLP

1

1    TCT for collection from Midland's California office.

2         8.    TCT paid filing fees and other court fees for lawsuits filed to assist

3    Midland's debt collection efforts and then sent requests for reimbursement directly to

4    Midland's California office.

5         9.    In late May 2009, Midland began an audit of TCT's books and records

6    relating to TCT's handling of Midland's accounts.  I am familiar with the audit, which

7    continued through early July 2009 (when TCT began withholding key data from

8    Midland).  During the audit, Midland obtained and reviewed data from TCT at

9    Midland's California office.

10        10.   In connection with Midland's audit of TCT's books and records, Midland

11   obtained over 30 boxes of records including pleadings that were never filed, although

12   TCT submitted requests for reimbursement of filing fees in connection with these

13   pleadings.  These approximately 30 boxes of records are physically located and

14   maintained at Midland's offices in San Diego; and I have reviewed certain of the

15   records contained therein.

16        11.   Additionally, copies of all correspondence between TCT and Midland

17   and the 2004 and 2006 Collection Agreements are located at Midland's offices in San

18   Diego.

19        12.   Based on the audit, Midland concluded that TCT had received funds that

20   it was not entitled to receive in connection with TCT's requests for reimbursement for

21   filing fees that TCT improperly charged and retained.  In response to TCT's improper

22   reimbursement requests, Midland initiated the transfer of funds from its California

23   office to TCT.

24        13.   Midland also learned from the audit that a number of cases exist where

25   TCT failed to file lawsuits on behalf of Midland, its California client, missing

26   statutory deadlines.  As a result of TCT's failures to timely file these lawsuits, (a)

27   claims on accounts may now be barred by the applicable statutes of limitations and (b)

28

2

DICKSTEIN
SHAPIRO LLP

Case No. 09-CV-2187 H (RBB)
DECLARATION OF BRIAN FRARY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

1  the possibility of collection or the amount that can be collected has diminished

2  because of the passage of time, resulting in further injury to Midland at its California

3  headquarters.

4      14.     Accounting records that demonstrate Midland's damages, which I have

5  seen, are located at Midland's San Diego office.

6      15.     Based on my review of the pleadings and my knowledge of the facts that

7  led Midland to file this lawsuit, I am aware that many of the potential witnesses who

8  may have knowledge regarding those facts reside in the San Diego area.  In addition to

9  myself, these witnesses include:

| Name and Title | Company | Area of Knowledge | Location |
|---|---|---|---|
| Maria Aldoshina *Financial Compliance Manager* | Midland | Knowledge of processes that Midland used in its audit of TCT and knowledge of the audit results. | California |
| Ryan Banda *Manager, Legal Outsourcing* | Midland | Knowledge of Midland's overall relationship and communications with TCT regarding Midland's accounts and the audit (managed the overall relationship between Midland and TCT) | California |
| Michael Burger *Manager, Strategic Initiatives* | Midland | Knowledge of data recovery and remediation efforts that Midland used to calculate its damages. | California |

3

| | | | |
|---|---|---|---|
| Lisa Carvalho<br>*Program Analyst* | Midland | Knowledge of how Midland evaluated and adjusted for discrepancies. | California |
| Serdar Dincaslan<br>*Vice President of Legal Outsourcing* | Midland | Knowledge of the terms of Midland's relationship with TCT, which he oversaw as the head of Legal Outsourcing. | California |
| Nicole Laureano<br>*Sr. Internal Auditor* | Midland | Knowledge of how Midland conducted its audit of TCT's books and records. | California |
| Alisa Leuthard<br>*Legal Outsourcing, Process Manager* | Midland | Knowledge of the data recovery and remediation processes that Midland used to calculate its damages. | California |
| Dana Lopez<br>*Contracts Administrator, Transactions* | Midland | Knowledge of Midland's records for authentication of agreements and related documents. | California |
| Lance Martin<br>*Vice President, Compliance* | Midland | Knowledge of how Midland's audit of TCT's books and records was conducted. | California |
| Ryan Stanley<br>*Director, Legal Outsourcing* | Midland | Knowledge of Midland's communications with TCT, Midland's audit of TCT, and admissions by TCT. | California |

4

| | | | |
|---|---|---|---|
| Sushmita Utpala<br>*Manager, Strategy & Analytics* | Midland | Knowledge of Midland's analysis and evaluation of financial data files and records provided by TCT in connection with the audit. | California |
| Danielle Wohlferht<br>*Manager, Legal Outsourcing* | Midland | Knowledge of Midland's on-site recovery of account level information, including financial, court documents, etc., from TCT. | California |
| Ren Zamora<br>*Director of Finance* | Midland | Knowledge of accounting matters related to TCT's representation of Midland, including its submission of reimbursement requests to Midland. | California |

16.    Attached hereto as Exhibit C is a true and correct copy of correspondence that Ryan Banda and Ryan Stanley received from TCT at our California office on June 29, 2009, which I reviewed as part of my responsibilities at Midland.

17.    Attached hereto as Exhibit D is a true and correct copy of correspondence that Midland sent to TCT on July 14, 2009, which I also reviewed as part of my responsibilities at Midland.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration is executed on November 20th, 2009, at San Diego, California.

Brian Frary

DOCSLA-46232

DICKSTEIN
SHAPIRO LLP

5

Case No. 09-CV-2187 H (RBB)
DECLARATION OF BRIAN FRARY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

# EXHIBIT A



## COLLECTION AGREEMENT

THIS COLLECTION AGREEMENT ("Agreement") is entered into as of _Sept. 1_____, 20_04_ by and between Midland Credit Management, Inc. ("MCM"), with its principal place of business located at 5775 Roscoe Court, San Diego, California, 92123, and Trauner, Cohen and Thomas, L.L.P. (the "Firm"), with its principal place of business located at 2880 Dresden Drive, Atlanta GA 30341.

NOW THEREFORE, MCM and the Firm, for the benefit of themselves, hereby agree as follows:

### SECTION 1.0

### DEFINITIONS

Unless otherwise defined herein, capitalized terms used in this Agreement (other than places, names of parties and Article headings) have the meanings specified below:

"Account" and "Accounts" mean a claim against a Debtor resulting from the extension of credit from a credit grantor, or their assignor or seller.

"Attorneys' Fees" mean both contractual and statutory amounts awarded by a court of competent jurisdiction against a Debtor in any action brought on an Account by the Firm.

"Closing Code" means the system code placed on an Account and transmitted with the Account at the time the Firm closes the Account and returns it to MCM.

"Commission" means the amount to be paid to the Firm in return for the provision of collection services contemplated in this Agreement, which amount is contingent upon the Firm's ability to obtain Proceeds from Debtors on Accounts placed with the Firm by MCM, and is based upon the Fee Schedule attached to this Agreement as Exhibit "B".

"Commissionable Collections" mean Proceeds less Court Costs reimbursed to MCM by the Firm, calculated at the Account level.

"Court Costs" mean, with respect to an Account placed with the Firm by MCM, the actual filing fees paid to a court of competent jurisdiction and any amounts paid to a Third Party that are recoverable from the Debtor and awarded by a court of competent jurisdiction under applicable law.

"Debtor" means an individual or other entity that has an Account with MCM, a credit grantor, or an owner of that Account on whose behalf MCM places the Account with the Firm.

"Direct Pays" mean payments received by MCM, from someone other than the Firm, after placement of an Account with the Firm, including but not limited to payments received from Debtors, the original issuer, and Consumer Credit Counseling Services.

"Firm" includes the Firm's principals, employees, agents, and anyone retained or authorized by the Firm to act on its behalf with respect to MCM matters.

"Gross Proceeds" mean the aggregate Proceeds collected by the Firm on Accounts placed with the Firm by MCM.

"Legal Relationship Analyst" means that person designated by MCM as the primary contact at MCM regarding one or more particular matters assigned to the firm for collection and/or other handling.

"Net Proceeds" mean the aggregate amount of Commissionable Collections less Court Costs spent, plus Court Costs returned, less Commissions.

1

"Procedures" mean the Midland Account Handling Procedures, a copy of which are attached to this Agreement as Exhibit "A".

"Proceeds" means items of payment, regardless of form, including but not limited to cash or cash equivalents paid by or on behalf of a Debtor, and include Court Costs returned plus Attorneys' Fees, to the extent the inclusion of Attorneys' Fees is not otherwise prohibited by law.

"Third Party" means any individual, sole proprietorship, partnership, limited liability partnership, limited liability company, corporation, or other entity of any type not named as a party to this Agreement.

## SECTION 2.0

## SCOPE OF REPRESENTATION

2.1  **Placement of Accounts.**  MCM may, in its sole and absolute discretion, place Accounts with the Firm for collection of Debtors resident throughout the United States from time to time. Accounts placed with the Firm by MCM are and will remain the sole and exclusive property of MCM. Neither the Firm nor any Third Party will acquire any right, title, or interest in any of the Accounts placed with the Firm for collection by virtue of such placement. Nothing within this Agreement is intended to, nor does it, require MCM to place Accounts with the Firm. MCM may, at any time and for any reason, or no reason at all, without notice, cease placing Accounts or recall any or all Accounts placed with the Firm, as provided for in Section 2.5 hereof.

2.2  **Collection of Placed Accounts.**

2.2.1  Manner of Collection.  In accepting the placement of Accounts from MCM, the Firm agrees to abide by, and conduct collection activities in a manner consistent with, the Procedures as revised from time to time, and all applicable local, state, and federal laws and regulations. The Firm understands and agrees that MCM may modify the Procedures from time to time throughout the term of this Agreement, and further agrees to be bound by, and act in a manner consistent with, those Procedures as modified. It is understood and agreed that MCM will provide no less than thirty (30) days notice of any changes to the Procedures prior to the date the changes are to become effective.

2.2.2  Forwarding of Accounts.  The Firm may forward Accounts to Third Party licensed attorneys under the following conditions:

2.2.2.1  Hiring Local Appearance Counsel.  The Firm is permitted to hire, at its own cost, a Third Party that is a licensed attorney to appear for the Firm at hearings that do not involve or require substantive decisions regarding the handling of the Account within the State of Georgia, or any other state in which the Firm maintains an office and/or attorney employees. The types of hearings for which such activities are permitted include appearance at status conferences, scheduling conferences, and conferences which do not go to the merits of the particular Account or case.

2.2.2.2  Forwarding to Counsel.  The Firm may forward Accounts to any attorney throughout the United States who is an employee of the Firm. In addition, the Firm may forward Accounts to a Third Party who is a licensed attorney experienced in debt collection for purposes of filing suit outside Georgia and collecting on any judgment obtained as a result of that suit for purposes of collecting from Debtors who reside outside of Georgia.

2.2.2.3  Limits.  The Firm may not forward to or hire (as local appearance counsel or otherwise) any of the law firms, or lawyers associated with or employed by those law firms, identified in Exhibit "C" to this Agreement.

2.2.2.4   Results.   If the Firm forwards an Account to a Third Party, [either in compliance with or] in violation of this provision: (1) the forwarding of the Account does not relieve or release the Firm of its obligations or liabilities hereunder; (2) MCM shall not be obligated to pay any Commission or expense incurred by the Firm or Third Party as a result of such forwarding to the Firm or the Third Party, except the Commission, which amount will be paid to the Firm; and (3) the Firm will defend, indemnify and hold MCM harmless (in accordance with the provisions of Section 5.1 hereof) from any losses, claims, damages, Commission, expense or other costs incurred or arising out of: (a) the acts or omissions of any Third Parties hired or retained by the Firm; and (b) any claims for any amount due as compensation for the provision of services, the advancement of Court Costs, or otherwise, asserted by or on behalf of any such Third Party.

2.2.2.3   Notice, Approval and Auditing.   To the extent the Firm decides to exercise its right to forward Accounts to a Third Party as contemplated by Paragraph 2.2.2.2, the Firm agrees to provide written notice of its intent to retain the Third Party to MCM prior to retaining that Third Party, including the identity of the Third Party, and further agrees that MCM has the right to approve or disapprove of the out-of-state counsel.   In the event MCM approves, or does not provide notice of disapproval, of the out-of-state counsel within 10 days of the notice, the Firm will be permitted to retain the out-of-state counsel.   In retaining the out-of-state counsel, the Firm will secure the right of MCM to audit the out-of-state counsel's operations during normal business hours and after providing reasonable notice.   Reasonable notice is any written notice provided to the Firm not less than five (5) business days prior to the date for the requested audit.

2.2.2.4   Hiring Other Services.   Nothing herein prevents the Firm from hiring, at its own expense, skip trace, asset location, and private service vendors in furtherance of the Firm's collection activities on the Accounts.

2.2.3   Deceased/Bankrupt.   In the event a Debtor is determined to be deceased or to have filed for debtor/bankruptcy protection (whether voluntary or involuntary) in accordance with applicable state and/or federal laws, the Firm will immediately cease all collection effort on such Account(s), add an appropriate Closing Code to the Account(s) designating it as deceased or bankrupt, close the Account, and return the Account and last known address for the Debtor to MCM within forty-eight (48) hours of confirming that information.   In such instance, the Firm's right to receive payment is limited to those amounts set forth at Paragraph 3.4.4 of this Agreement.

2.2.4   Obligations Upon Notice of Account Recall.   In the event MCM recalls an Account, as provided for at Paragraph 2.5 of this Agreement, the Firm agrees to cease all collection effort on such Account(s) immediately upon receipt of the notice of recall (including any communication with the Debtor).   Within forty-eight (48) hours of receipt of the notice of recall, the Firm agrees to add an appropriate closing code to the Account(s) designating it as recalled, close the Account, and return the Account and last known address for the Debtor to MCM.   MCM has the right, when an Account is recalled, to notify the Debtor that the Account is no longer with the Firm, and that all future payments are to be sent directly to MCM.   In such instance, the Firm's right to receive payment is limited to those amounts set forth at Paragraph 3.4.4 of this Agreement.

2.3   Debtor Complaints, Counter-Claims, and Cross-Complaints.   The parties to this Agreement recognize that from time to time, a Debtor may file a complaint, counter-claim, or cross-complaint naming MCM and/or the Firm.   Immediately upon receipt of such a filing, the Firm will forward to the attention of the Firm's then current MCM Legal Relationship Analyst, via facsimile and regular United States first class mail, a copy of the Debtor's filing for review by MCM.   The Firm will not enter an appearance or make any filing in response to such a Debtor's filing, unless the Firm is expressly authorized to represent MCM in that action in writing signed by MCM's General Counsel, Associate General Counsel, or an officer of MCM, or unless such a filing is required to protect MCM or prevent the Debtor from

obtaining judgment against MCM through default proceedings. In the event the Firm is authorized to represent MCM with respect to the Debtor filing, or does so as otherwise permitted by this Agreement, the Firm will be compensated as set forth at Paragraph 3.4.3 of this Agreement.

2.4 **Other Duties of the Firm.**

2.4.1 <u>Insurance Coverage</u>. Throughout the term of the Agreement, the Firm must maintain Errors & Omissions insurance in an amount not less than $1,000,000 per occurrence and $1,000,000 in aggregate, and provide proof of same to MCM. In addition, to the extent the Firm retains Third Parties to collect on Accounts forwarded to the Firm by MCM, the Firm agrees to ensure that the Third Party maintains at least the same amount of Errors & Omissions insurance and will further cause proof of insurance to be forwarded to MCM at the time that the Firm provides notice of its intent to retain the Third Party as required by Section 2.2.2.3. The Firm will immediately inform MCM in the event one or more of the Firm's required policies of insurance is cancelled, whether voluntarily or involuntarily, and a similar policy does not become effective on or before the date of cancellation. The Firm will make commercially reasonable efforts to have MCM named as a party to receive notice in the event of reduction or cancellation of the required policy from the insurance carrier.

2.4.2 <u>Daily Reporting</u>. The Firm will successfully upload, at least once each day on which the Firm is open for business, all information regarding any activity and/or transaction that occurs during that work day or the previous day on any Account received by the Firm from MCM, whether that Account is being handled by the Firm or another law firm or attorney on the Firm's behalf, regardless of the jurisdiction. The activities and/or transactions that are to be updated for each Account include, but are not limited to, communications or attempted communications between the Firm and the Debtor and/or others, the date legal action is filed by the Firm and/or the Debtor, the court in which any legal action is filed, case numbers, service dates, judgment dates, post-judgment remedies and the date such items or activities are filed and/or conducted, payment information and the application of payments received by the Firm from or on behalf of the Debtor, and Court Costs. The Firm also agrees to utilize MCM's Daily Invoicing Report, as part of its confirmation process relating to the successful daily upload of activity and payments, to confirm that those amounts the Firm believes were transmitted to MCM were received by MCM as part of each daily upload. In the event the Firm believes there exists, or becomes aware of, one or more discrepancies between what the Firm believes was transmitted to MCM and what MCM received, the Firm is to contact MCM's Financial Process Analyst to discuss and resolve the apparent discrepancy within 24-hours of discovery.

2.4.3 <u>Post-Termination Obligations</u>. If this Agreement is terminated for any reason, or either party provides the required notice of intent not to renew this Agreement, the Firm agrees at its sole expense, no later than the effective date of termination or non-renewal, to close all Accounts previously forwarded to the Firm, and to provide MCM, with respect to each Account, with copies of any complaints, judgments, or post-judgment filings, the last known address of the Debtor, and a substitution of attorney prepared by the firm and signed in blank. The Firm further agrees, with respect to those Accounts that have been reduced to judgment, to release any lien associated therewith at the request of MCM without charge to MCM, which obligation survive the termination or non-renewal of this Agreement. In the event of termination or non-renewal, the Firm is entitled to receive those amounts set forth in Paragraph 3.4.5 of this Agreement.

2.4.5 <u>Maintenance of Technology</u>. The Firm agrees to have, acquire as necessary, and maintain throughout the term of this Agreement electronic technology resources sufficient to permit the Firm to perform all obligations called for by this Agreement, including the ability to transmit and receive data regarding Accounts, have internet access available at the Firm at all times, and make payments through the use of electronic funds transfer. MCM and the Firm expressly recognize that computer networks and electronic transmissions cannot be completely secure; however, the Firm shall use such security measures as are commercially reasonable throughout the term of this Agreement to prevent security breaches across its network or in the

interaction of the server with MCM's computers and/or terminals and security breaches in the server interaction with resources outside of any firewall that may be built into the server. The Firm shall, at least one time during each six (6) month period during which this Agreement is in effect, review, maintain and, as appropriate, upgrade or enhance the Firm's security measures to the extent necessary for the Firm to meet the then-current security standards for the electronic commerce industry. MCM shall be solely responsible for employing security measures they deem appropriate to prevent security breaches with respect to their respective servers.

.4.6     <u>Closing Codes</u>.  When the Firm closes an Account, whether at the request of MCM or in its own discretion, the Firm must place the appropriate Closing Code on the Account.

2.5     <u>**Recall of Accounts.**</u>  MCM has the right to recall any or all Account assigned to the Firm at any time, for any reason or no reason, without any obligation to specify the reason for such recall. In the event an Account is recalled by MCM, the only compensation due the firm are those amounts set forth at Paragraph 3.4.4 of this Agreement. In the event MCM recalls one or more Accounts, the Firm will take those acts set forth at Paragraph 2.2.4 of this Agreement.

<u>**SECTION 3.0**</u>

<u>**FINANCIAL PROVISIONS**</u>

3.1     <u>**Establishment of Segregated Account.**</u>  The Firm will establish and maintain a restricted account with a financial institution of the Firm's choosing, at the Firm's sole expense, for the deposit of all Proceeds received by the Firm from or on behalf of a Debtor. The Firm agrees to deposit all funds received into the segregated account maintained pursuant to this paragraph within twenty-four (24) hours of receipt of those funds by the Firm. In establishing and maintaining the segregated account, the Firm will take all steps necessary to permit the withdrawal by MCM, via electronic funds transfer, of proceeds due MCM from that segregated account on a weekly basis. The Firm is responsible for correctly posting the Gross Proceeds to the respective Accounts and will promptly make any necessary corrections upon notification by MCM.

3.2     <u>**Remittances to MCM.**</u>

3.2.1     <u>Account Level Remittance Handling</u>.  Unless otherwise instructed by MCM, or prohibited by law, Proceeds received by the Firm are to be applied at the account level in the following order: Court Costs, interest, principal, and Attorney's Fees.

3.2.2     <u>Firm Level Remittance Handling</u>.  For each remittance period, MCM will withdraw, via electronic funds transfer from the segregated account, an amount equal to the Net Proceeds from the remittance period less any unreimbursed Court Costs from the prior period. If Net Proceeds less unreimbursed Court Costs results in a negative amount, no funds will be withdrawn by MCM for that remittance period.

3.3     <u>**Error Handling.**</u>  On at least a daily basis, the Firm will confirm that all Net Proceeds remitted to MCM the prior day have not been returned to the Firm for additional handling or correction of errors in the processing of those remittances. In those cases in which a remittance has been returned to the Firm, the Firm will correct the errors and remit the corrected amounts to MCM within 24-hours of the return to the Firm of those Proceeds.

3.4     <u>**Firm Commissions and Costs.**</u>

3.4.1     <u>Standard Collection Commissions</u>.  With respect to those Accounts for which the Firm receives payment from the Debtor, whether through voluntary or involuntary processes, the Firm is entitled to a Commission for services performed on behalf of MCM in the collection of Accounts, calculated as a percentage of the amounts collected on each Account. Expenses such as

5

postage, copying, and other expenses may not be deducted from Gross Proceeds prior to calculating Net Proceeds to MCM, and are the sole responsibility of the Firm unless otherwise agreed to as a reimbursable expense in writing signed by the Director, Legal Outsourcing, or an officer of MCM on behalf of MCM. The Firm will first reimburse MCM for all Court Costs prior to determining and deducting the Firm's Commission at the Account level from the remittances to MCM at the Firm level.   The Firm understands and agrees that MCM may modify the Commission from time to time throughout the term of this Agreement, and further agrees to be bound by the new Commission as modified. It is understood and agreed that MCM will provide no less than thirty (30) days notice of any changes to the Commission prior to the date the changes are to become effective.

3.4.2    Court Cost Handling.   Court Costs will be advanced by the Firm.   Prior to incurring any Court Costs, the Firm will evaluate each Account for which Court Costs are to be incurred to ensure, to the extent practicable, that the Firm is not expending Court Costs on an Account that is uncollectible.   If the Firm fails to evaluate accounts prior to filing suit and incurring Court Costs, and MCM terminates this Agreement based upon a lack of Firm performance, the Firm is responsible for paying any accumulated Court Cost deficit through continued collection activity on the Accounts for which those Court Costs have been incurred. This situation constitutes a limited exception to the provisions set forth at Paragraphs 3.4.4 and 3.4.5 regarding the Firm's right to reimbursement of Court Costs upon termination of this Agreement.

3.4.3    Debtor Complaints, Counter-Claims and Cross-Complaints.   In those instances in which the Firm is authorized pursuant to Paragraph 2.3 to represent MCM in the defense of Debtor filed litigation, or does so to preserve MCM's right to defend itself and avoid entry of judgment by default, the Firm is entitled to compensation at the rate of $125 per hour. The Firm will not bill MCM for, and is not entitled to payment for, appearances or other actions the Firm would be required to take in furtherance of the underlying collection matter.

3.4.4    Recall or Return of Accounts.   With respect to those Accounts returned to MCM for any reason, including but not limited to death of the Debtor, bankruptcy of the Debtor, or recall of the Account(s) by MCM, the Firm is not entitled to any Commission or charge of any kind. However, the Firm will be entitled to reimbursement of Court Costs incurred in pursuing the recalled Account(s) and the Commission for all Proceeds received by the Firm prior to receipt of notice of the Debtor's death, bankruptcy, or MCM's intent to recall the Account(s).

3.4.5    Compensation Upon Termination By MCM.   Unless otherwise provided in this Agreement, if this Agreement is terminated by MCM for any reason, the Firm is not entitled to any compensation from MCM for any Proceeds received from or on behalf of a Debtor which are received by either MCM or the Firm after the effective date of termination.   If this Agreement is terminated by MCM, all Net Proceeds collected prior to the effective date of termination will be immediately transferred from the Firm to MCM, and all future Gross Proceeds received on MCM Accounts after the date of termination must be forwarded to MCM within twenty-four (24) hours of receipt by the Firm without reduction.   The Firm is entitled to reimbursement of Court Costs incurred in pursuing all Accounts recalled at the time of termination or non-renewal, as provided at Section 3.4.4 of this Agreement, or at any time thereafter with respect to those Accounts not recalled at the time of termination or non-renewal.

3.5    Direct Pay Handling.   In the event MCM receives three consecutive Direct Pays from a Debtor, MCM may recall the Account as provided for in Section 2.5, and the Firm's compensation on the recalled Account will be calculated in the manner set forth at Section 3.4.4 of this Agreement.   The handling of Direct Pay Accounts will be consistent with MCM's Direct Pay policy as revised in June 2003, and set forth in Exhibit "A" hereto, as such policy may be amended by MCM from time to time.

## SECTION 4.0

## TERM

4.1     **Term.**  The term of this agreement is one (1) year, and will continue thereafter until terminated.  This agreement may be terminated for any reason by either party upon one hundred eighty (180) days prior written notice to the other.  If the Firm fails to perform any of its obligations hereunder or if MCM determines there has been an adverse change in the Firm's condition, MCM may immediately terminate this Agreement upon deliver of written notice to the Firm.

## SECTION 5.0

## INDEMNIFICATION

5.1     **Indemnification by Firm.**  The Firm agrees to defend, indemnify and hold harmless MCM (and its parent corporation, Encore Capital Group, Inc., and MCM's sister subsidiaries, and each of their officers, directors, employees and agents) from any losses, claims, damages or costs incurred or arising out of (1) the forwarding to or hiring of Third Parties as set forth in Section 2.2.2.2 hereof; and (2) any claim, suit, or other adversary proceeding brought against MCM based upon, arising out of, or relating to one or more allegations that the intentional, reckless, and/or negligent act(s) or omission(s) by or on behalf of the Firm in connection with the placement or collection of one or more Accounts by MCM with the Firm or the Firm's collection of the Accounts, constitutes a violation of any federal, state and/or local laws or regulations, including but not limited to the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692, et seq.) and the Fair Credit Reporting Act (15 U.S.C. §§ 1681, et seq.).  The defense of any such action must be handled by counsel acceptable to MCM.  The Firm agrees to pay all legal fees and costs as incurred, as well as any damages and costs awarded in any such claim or suit.  In the event the Firm is provided notice of such an action, but fails to undertake the defense, the Firm agrees pay any amounts agreed to as a compromise of any such claim or suit by MCM.  The Firm's indemnification obligations survive the termination or non-renewal of this Agreement.

5.2     **Indemnification by MCM.**  MCM agrees to hold the Firm harmless against, and at MCM's expense handle and defend any claim, suit, or other adversary proceeding brought against the Firm based upon, arising out of, or relating to one or more allegations that the intentional, reckless, and/or negligent act(s) or omission(s) by MCM in connection with the placement or collection of one or more Accounts, constitutes a violation of any federal, state and/or local laws or regulations, including but not limited to the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692, et seq.) and the Fair Credit Reporting Act (15 U.S.C. §§ 1681, et seq.).  MCM shall pay all damages and costs awarded in any such claim or suit and, in the event MCM is provided timely notice of such an action, but fails to undertake the defense, shall pay any amounts agreed to as a compromise of such claim or suit by the Firm.  MCM's indemnification obligations shall survive the termination or non-renewal of this Agreement.

5.3     **Notice.**  Both MCM and the Firm agree to promptly notify the other of any claim, demand, suit, or threat of suit of which that party becomes aware and which the party reasonably believes may give rise to a right of indemnification as provided for in this Agreement; provided that the failure to provide the notice required does not relieve the indemnifying party from any liability it may have hereunder or otherwise except to the extent the failure to provide the required notice materially prejudices the rights of the party entitled to receive such notice.  The indemnifying party is be entitled to participate in the settlement and/or defense of any action for which indemnification is being sought or provided and, if the indemnifying party is not named as a party to the action and so elects, may take over and control the settlement and/or defense of such action with counsel satisfactory to the indemnified party.  The parties agree to cooperate in the defense of any such action, and in no event will the indemnifying party, except with the express written consent of the indemnified party or as provided at Paragraphs 4.1 and 4.2 of this Agreement, consent to the entry of any judgment or enter into any settlement that either: (a) does not include, as an unconditional term, the grant by the claimant of the indemnified party of a release of all liabilities, known or unknown, with respect to such claims; or (b) otherwise adversely affects the rights of the indemnified party.

7

## SECTION 6.0

## MISCELLANEOUS PROVISIONS

6.1    **Confidentiality and Privacy.**

6.1.1    Confidentiality of Data.    The Firm understands and agrees that all Accounts, records, documents, and other Account related information provided to it by MCM constitute proprietary and highly confidential information. The Firm agrees not to disclose, to publish, cause to be disclosed or published, or use such information for the benefit of, any Third Party or itself. The Firm agrees to comply with all MCM requirements regarding confidentiality, and to take all commercially reasonable measures to maintain the confidentiality of such information.

6.1.2    Consumer Privacy.    The Firm will protect and keep confidential, to the extent required by all applicable state and federal privacy laws, rules and regulations, including but not limited to the Gramm-Leach-Bliley Act ("GLB Act") as set forth at 15 U.S.C. §6801, et. seq., all Nonpublic Personal Information, as that phrase is defined within the GLB Act, about or pertaining to any person whose identity is available to the Firm as a result of the placement of Accounts with the Firm by MCM, or otherwise obtained by the Firm. The Firm further agrees to abide by all applicable laws, rules and regulations pertaining to the use and/or disclosure of all Nonpublic Personal Information pertaining to any and all persons, including (without limitation) the GLB Act.

6.1.3    Confidential Agreement.    The Firm agrees to keep the terms and conditions of this Agreement, and its existence, confidential from third parties unless disclosure is approved by MCM in writing prior to the Firm making such disclosure. Notwithstanding anything herein to the contrary, each party hereto may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transaction contemplated by this Agreement and all materials of any kind (including opinions or other tax analyses) that are provided to such party or such person relating to such tax treatment and tax structure. This authorization is not intended to permit disclosure of any other information including terms or details not relevant to the tax treatment or the tax structure of this Agreement.

6.2    **Audit.**    The Firm agrees that MCM has the right, during normal business hours, with or without prior notice, to review, audit, and/or copy any and all documents maintained by the Firm with respect to the Account(s). The Firm agrees to cooperate with MCM in the conduct of an audit and to provide MCM with access to all Accounts, equipment, staff, or other resources without charge to MCM.

6.3    **Counterparts; Facsimile Signatures.**    This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together constitute one and the same instrument. Facsimile signatures are deemed to be an original signature.

6.4    **Notices.**    Any notices required to be provided by this Agreement must be provided in writing and delivered via certified or registered mail, postage prepaid, return receipt requested, or by a nationwide overnight courier, addressed as follows (or to such other address as such person may have last designated by appropriate notice to the other party):

Midland Credit Management, Inc.        Trauner, Cohen and Thomas
Attn: J. Brandon Black                 Attn: Russell S. Thomas
5775 Roscoe Court                      2880 Dresden Drive
San Diego, CA  92123                   Atlanta GA 30341

Each such notice is effective three business days after such communication is deposited in the mails, or the next business day if sent by overnight courier.

8

6.5    **Entire Agreement.** This Agreement, including any exhibits attached hereto and documents incorporated by reference (as the same may be revised or supplemented in the future) constitutes the entire agreement between MCM and the Firm with respect to the placement of Accounts by MCM to the Firm using the YouveGotClaims.com system, or any other system MCM may use now and/or in the future. Except as otherwise provided in this Agreement, all prior proposals, understandings, and other agreements, whether oral or written, between MCM and the Firm that relate to the subject matter of this Agreement are hereby superseded and revoked. This Agreement may not be modified or altered except in writing by an instrument duly executed by both parties.

6.6    **Severability.** If any provision of this Agreement is determined to be invalid, illegal or unenforceable by any governmental entity, including without limitation a court of competent jurisdiction, the remaining provisions of this Agreement will remain in full force and effect provided that the economic and legal substance of the transactions contemplated is not affected in any manner materially adverse to any party. In the event of any such determination, the parties agree to negotiate in good faith to modify this Agreement to fulfill as closely as possible the original intents and purposes hereof. To the extent permitted by law, the parties hereby to the same extent waive any provision of law that renders any provision hereof prohibited or unenforceable.

6.7    **Applicable Law.** This Agreement is governed by, and is to be interpreted consistent with, the laws of the state of California, without regard to conflicts of law provisions.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed in duplicate originals by its duly authorized representative on the respective dates entered below.

Date: 9/29/0 4

Midland Credit Management, Inc.
5775 Roscoe Court
San Diego, California  92123

By: _____

Name: _Brandon Black_____

Title: _COO_____

Date: 9/27/04

Trauner, Cohen and Thomas, L.L.P.
2880 Dresden Drive
Atlanta GA 30341

By: _____

Russell S. Thomas

Partner

9

# EXHIBIT B

# COLLECTION AGREEMENT

THIS COLLECTION AGREEMENT (together with its exhibits and other documents expressly incorporated herein by reference, collectively, this "Agreement") is entered into this __ day of ___, 2006 (the "Effective Date"), by and between Midland Credit Management, Inc. ("MCM"), with its principal place of business located at 8875 Aero Drive, Suite 200, San Diego, California 92123, and Trauner, Cohen & Thomas (the "Firm"), with its principal place of business located at 2880 Dresden Dr., Atlanta, GA 30341.

WHEREAS, certain subsidiaries of MCM (the "MCM Owners") own certain charged-off consumer and commercial receivables and intend to continue to acquire charged-off consumer and commercial receivables in the future (such receivables as more particularly described below, the "Accounts").

WHEREAS, MCM acts on behalf of the MCM Owners, as an independent contractor, in connection with debt collection activities, as well as general administrative and non-collection activities relating to the Accounts.

WHEREAS, MCM desires to place certain Accounts with the Firm and the Firm wishes to accept the Accounts pursuant to the terms and conditions set forth in this Agreement.

WHEREAS, the Firm acknowledges and agrees that the MCM Owners shall be third party beneficiaries to this Agreement.

NOW, THEREFORE, in consideration of the premises, mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree for themselves and the benefit of the MCM Owners, as follows:

## SECTION 1

## DEFINITIONS

Unless otherwise defined herein, capitalized terms used in this Agreement have the meanings specified below:

"Account" and "Accounts" mean a claim against a Debtor resulting from the extension of credit from a credit grantor, which is now owned by a MCM Owner and has been placed with the Firm by MCM.

"Attorneys' Fees" mean both contractual and statutory amounts awarded by a court of competent jurisdiction against a Debtor in any action brought on an Account by the Firm.

"Closing Code" means the system code placed on an Account and transmitted with the Account at the time the Firm closes the Account for any reason and returns it to MCM.

"Commission" means the amount to be paid to the Firm in return for the collection services and all other related services or activities performed by the Firm pursuant to the terms of this Agreement, which amount shall be contingent upon the Firm's payment to MCM of Commissionable Collections received from Debtors on Accounts, and shall be calculated based on the fee schedule attached to this Agreement as Exhibit "A" and incorporated herein by this reference, which fee schedule may be supplemented, modified, revised, amended or altered by MCM from time-to-time in its sole and absolute discretion.

"Commissionable Collections" mean the sum of Proceeds less Court Costs calculated at the Account level.

"Court Costs" mean, with respect to an Account, the actual filing fees paid to a court of competent jurisdiction and any amounts paid to a Third Party that are recoverable from the Debtor by a court of competent jurisdiction under applicable law, and expressly excludes any and all attorney's fees.

"Debtor" means the one or more persons that have been identified by a credit grantor as the person(s) responsible for repayment of an Account.

"Direct Pays" mean payments received by MCM, from a Third Party other than the Firm, after placement of an Account with the Firm, including but not limited to payments received directly from or on behalf of a Debtor.

"Financial Reports" consist of the reports (and the information required by MCM to be contained therein) now or hereafter existing or modified including, but not limited to, the daily invoicing report and the ACH cumulative report.

"Firm" includes the Firm's principals, employees, agents, and anyone retained or authorized by the Firm to act on its behalf with respect to the Accounts, or any other matters relating thereto; provided that the Firm's ability to retain or use a Third Party to act on its behalf is conditioned upon the Firm's compliance with the terms hereof in connection therewith, including, without limitation, obtaining any necessary consents and approvals of MCM.

"Procedures" mean the Midland Account Handling Procedures, a copy of which is attached to this Agreement as Exhibit "B" and incorporated herein by this reference, which procedures may be modified by MCM from time-to-time in its sole and absolute discretion.

"Proceeds" means items of payment, regardless of form, including but not limited to cash or cash equivalents paid by or on behalf of a Debtor and received by the Firm, and include, without limitation, Court Costs and Attorneys' Fees, to the extent the inclusion of Attorneys' Fees is not otherwise prohibited by law, paid by or on behalf of the Debtor.

"State(s)" means the State(s) of GA, NC, SC

"Third Party" means any individual, sole proprietorship, partnership, limited liability partnership, limited liability company, corporation, or other entity of any type not named as a party to or a third-party beneficiary of this Agreement.

## SECTION 2

## SCOPE OF REPRESENTATION

2.1  **Placement of Accounts.**  From time to time, MCM may, in its sole and absolute discretion, place Accounts with the Firm for collection from Debtors resident in the State(s).  Accounts placed with the Firm are and will remain the sole and exclusive property of the respective MCM Owner. Neither the Firm nor any Third Party will acquire any right, title, or interest in or to any of the Accounts including, but not limited to, any documents, records, and other information relating to the Accounts or the Debtors.  MCM may, at any time and for any reason, or no reason at all, without notice and without further obligation, cease placing Accounts with the Firm.

2.2  **Collection of Placed Accounts.**

2.2.1  Manner of Collection.  In accepting the placement of Accounts from MCM, the Firm shall abide by, and conduct all of its activities in a manner consistent with the then current Procedures and all applicable local, state, and federal laws, rules and regulations including, without limitation: (i) complying with the Fair Debt Collection Practices Act, as amended, The Right to Financial Privacy Act of 1978, as amended, the Fair Credit Reporting Act, as amended, Gramm-Leach-Bliley Act, as amended, the rules adopted under each such statute and any and all

2

applicable state and local laws and rules regarding Firm's and MCM's debt collection activities, including, but not limited to late fees and interest; and (ii) avoiding threatening or implying that the Firm will take action that it does not intend to take or cannot take. To the extent the Procedures at any given time conflict in any way with an applicable law, rule or regulation, the requirements of such applicable law, rule and regulation will govern and control the Firm's conduct and activities under this Agreement. It is the Firm's sole responsibility and obligation to ensure that any suit filed in connection with an Account is brought in the name of the real party in interest (i.e., either in the name of the respective MCM Owner, or MCM only in the event a lawsuit is permitted to be brought in the name of a collection agency).

2.2.2   <u>Forwarding of Accounts or Engaging Third Parties</u>.   Except as specifically permitted by this Section 2.2, the Firm is not permitted and shall not forward or transfer any Accounts to any Third Party or engage any Third Party in connection with the servicing of any Account without the prior written approval of MCM. Notwithstanding anything set forth in this Agreement to the contrary, the Firm shall not under any circumstances be permitted to forward to or engage any Third Party (including the individual employees or agents of such Third Party): (i) identified in Exhibit "C" to this Agreement and by this reference made a part hereof; or (ii) whose operations and/or activities relating to an Account is outside the borders of the United States.

2.2.2.1   <u>Engaging Local Appearance Counsel</u>.   The Firm is permitted to engage, at its own cost and expense (without right to reimbursement thereof), a Third Party who is a licensed attorney in good standing to appear on behalf of the Firm within the State(s) at hearings that the Firm would otherwise have authority to appear pursuant to the terms of this Agreement.

2.2.2.2   <u>Consequence of Forwarding Accounts or Engaging Third Parties</u>.   If the Firm forwards an Account to or engages any Third Party: (i) nothing contained in this Agreement, or by virtue of any consent given or inferred under this Agreement, or by virtue of the Firm's forwarding of an Account to or its engaging of a Third Party shall relieve or release the Firm from its obligations and liabilities under this Agreement, and the Firm shall remain, under all circumstances, liable to MCM and the MCM Owners for the matters set forth in this Agreement including, without limitation, any acts or omissions of any Third Party as if such acts or omissions were those of the Firm itself; and (ii) MCM shall not be obligated to pay any remuneration to the Firm or any Third Party, or reimburse the Firm or any Third Party for costs or other expenses suffered or incurred as a result of or in connection with the forwarding of Accounts to or the engagement of any Third Party, except for the Commission and Court Costs otherwise due and owing to Firm under this Agreement, which Commissions and Court Costs shall only be paid to the Firm.

2.2.2.3   <u>Notice and Approval</u>.   If the Firm desires to forward Accounts to or engage a Third Party, the Firm will provide MCM with prior written notice. At a minimum, this notice shall identify the Third Party to whom the Firm intends to forward Accounts or otherwise engage, and shall include such reasonable additional or supplemental information as requested by MCM relating to the: (i) background, character, credentials and experience of the Third Party; and (ii) circumstances and reasoning surrounding the engagement of the Third Party. MCM will have 10 days from its receipt of this notice to approve or disapprove of the Third Party. In the event MCM approves, or does not provide notice of disapproval within the 10-day period, which approval may be withheld for any or no reason, the Firm will be permitted to forward the Accounts to or engage the Third Party. Prior to forwarding Accounts to or engaging a Third Party, the Firm (in addition to the other obligations set forth in this Agreement) agrees: (x) not to enter into any arrangements or dealings with such Third Parties that are inconsistent with (A) its obligations under this Agreement, or (B) the rights of MCM or an MCM Owner; (y) to enter into a written agreement with each Third Party that explicitly names MCM and each MCM Owner as third-party beneficiaries of such agreement; and (z) include as a term of its agreement with each Third Party the right of MCM to audit all aspects of the Third Party's business and operations relating to the Accounts on such terms and conditions no less favorable to MCM than those set forth herein.

3

2.2.2.4  Engaging Other Services.  Nothing contained in this Section 2.2.2 shall prevent the Firm from engaging, at the Firm's own cost and expense (without right to reimbursement thereof) and without notice to MCM, vendors to provide skip trace, asset location, and other ancillary non-collection services to assist the Firm with its collection efforts; provided such Third Parties are reputable, knowledgeable and licensed, and provided further the Firm has satisfied and continues to satisfy its obligations under this Agreement.

2.2.3  Deceased/Bankrupt Debtor.  In the event a Debtor of an Account is determined to be deceased or to have filed for bankruptcy protection (whether voluntary or involuntary) in accordance with applicable state and/or federal laws, MCM shall be entitled, in its sole and absolute discretion, to recall the Account, in which case the Firm shall: (i) immediately cease all collection efforts on such Account; and (ii) within forty-eight (48) hours of MCM's notice of recall, add an appropriate Closing Code to the Account designating it as deceased or bankrupt, close the Account, and return the Account (along with any and all information related thereto, including, without limitation, the Debtor's last known address and telephone number, and all information and documentation in support of the Closing Code) to MCM.  In all such instances, the Firm's right to receive any remuneration of any kind whatsoever is limited to that which it is entitled, if any, under Section 3.4.4 of this Agreement.  Following the return of an Account, MCM shall have the right to notify the Debtor that the Account is no longer with the Firm, and that all future payments are to be sent directly to MCM.

2.3  **Debtor Disputes, Complaints, Counter-Claims, and Cross-Complaints.**

2.3.1  Notice of Disputes and Claims.  The parties to this Agreement recognize that from time to time, a Debtor may dispute matters relating to an Account based on fraud (each, a "Dispute"), or file a complaint, counter-claim, or cross-complaint in connection with an Account naming MCM, a MCM Owner and/or the Firm as parties (each, a "Claim").  Immediately upon receipt of a Dispute or a Claim, the Firm shall: (i) cease all collection efforts on such Account; (ii) in the case of a Dispute only, add an appropriate Closing Code to the Account, close the Account, and return the Account (along with any and all information related thereto, including, without limitation, the Debtor's last known address and telephone number, and all information and documentation in support of the Closing Code) to MCM; and (iii) in the case of a Claim only, forward to the attention of the General Counsel of MCM, via facsimile and regular United States first class mail, a copy of the Claim.  In the event of a Claim, the Firm will immediately notify MCM in writing of the type and nature of the Claim and only enter an appearance or make a filing in response to any such Claim if MCM does not instruct the Firm, within ten (10) days of delivery of such notice, to close and return the Account.  If MCM does instruct the Firm to close and return the Account, the Firm shall immediately add an appropriate Closing Code to the Account, close the Account, and return the Account (along with any and all information related thereto, including, without limitation, the Debtor's last known address and telephone number, and all information and documentation in support of the Closing Code) to MCM.  In the event the Firm does represent MCM and/or the MCM Owner with respect to a Claim, the Firm will be compensated at the prearranged rate of $150 per hour.

2.3.2  Lawsuits relating to Firm's Activities or Operations.  Firm will give prompt written notice to MCM of the commencement of any action, suit or proceeding before any court, arbitrator, or any governmental department, board, or agency affecting Firm, its operations, or any property of Firm which would have a material adverse effect on the business or operations of the Firm, or would materially affect the ability of Firm to perform its obligations under this Agreement.  The notice provided for herein shall state the nature and status of such action, suit, or proceeding and any other information reasonably necessary to adequately describe the nature and potential consequences of such action, suit or proceeding.

2.4     **Other Duties of the Firm.**

2.4.1     Insurance Coverage.     Throughout the term of this Agreement and for a minimum period of two years thereafter, the Firm shall maintain Malpractice/Errors & Omissions insurance in an amount not less than $1,000,000 per occurrence and $1,000,000 in aggregate annually, which insurance shall name MCM and the MCM Owners as loss payees. The Firm will place the insurance policies listed above with insurance companies who are licensed to do business in the Firm's states of operation and whose financial condition, policy forms, and deductibles are acceptable to MCM.  All policies will contain the following provision: "This policy will not be modified by any endorsement which restricts or reduces the required coverage."The Firm will immediately inform MCM in the event such insurance is cancelled, whether voluntarily or involuntarily, and a similar policy does not become effective on or before the date of cancellation. Upon the request of MCM, the Firm shall provide MCM with certificates of insurance evidencing proof of coverage in conformity with this Section.

2.4.2     Daily Reporting.   The Firm will successfully upload, at least once each business day, all information regarding any activity and/or transaction that occurs during that workday or the previous day on any and all Accounts, whether the Account is being handled by the Firm, a Third Party, or another law firm or attorney on the Firm's behalf, regardless of the jurisdiction. The activities and/or transactions that are to be updated for each Account include, but are not limited to, communications or attempted communications to or from the Debtor and/or others on behalf of the Debtor or in connection with the Account, the date any legal action is filed by or against the Debtor or in connection with an Account, the court in which any legal action is filed, case numbers, judgment dates, post-judgment remedies attempted and the date such items or activities are filed and/or conducted, payment information and the application of payments made by or on behalf of the Debtor, Court Costs, designation of the appropriate and current YGC Status Codes provided to Firm by MCM, a listing of and the corresponding Closing Codes for any Accounts closed or recalled hereunder, and any other information reasonably requested by MCM. The Firm also agrees to utilize MCM's Financial Reports, as part of its confirmation process relating to the successful daily upload of activity and payments, to confirm that those amounts the Firm believes were transmitted to MCM were received by MCM as part of each daily upload.  In the event the Firm believes there exists, or becomes aware of, any discrepancies in postings or remittances and any other matters arising out of or relating to this Agreement, the Firm shall immediately contact MCM to discuss and resolve all actual or apparent discrepancies within 24-hours of discovery.

2.4.3     Maintenance of Technology.   The Firm agrees to have, acquire as necessary, and maintain throughout the Term of this Agreement electronic technology resources sufficient for the Firm to meet its obligations under this Agreement, including, without limitation, the ability to transmit and receive data regarding Accounts, having access to the internet at all times, and the ability to make and receive payments through the use of electronic funds transfer.  MCM and the Firm expressly recognize that computer networks and electronic transmissions cannot be completely secure; however, the Firm shall use such administrative, procedural and technical safeguards and security measures as are commercially reasonable throughout the Term of this Agreement to prevent security breaches across its own network and in the interaction of its server with MCM's computers and/or terminals and security breaches in its server interaction with resources outside of any firewall that may be built into the server, or to otherwise safeguard the information provided or acquired in connection with the Accounts or this Agreement.  The Firm shall, at least one time during each six (6) month period (or more frequently if required by law, rule or regulation) during the Term of this Agreement, review, maintain and, as appropriate, upgrade or enhance the Firm's security measures to the extent necessary for the Firm to meet: (i) the then-current security standards for the electronic commerce industry; and (ii) any applicable laws, rules and regulations. Without limiting the generality of the foregoing, the Firm represents, warrant and covenants that it has and will continue to have for as long as it retains nonpublic personal information about any Debtor, adequate administrative, technical and physical safeguards to: (i) ensure the security and confidentiality of such information and records; (ii) protect against

anticipated threats or hazards to the security and integrity of such matters; and (iii) protect against unauthorized access to the use and disclosure of any such records and information.

2.4.4   Closing Codes.   When the Firm closes an Account (whether at the request of or recall by MCM, in the Firm's own discretion, upon termination or expiration of this Agreement, or as otherwise required by this Agreement), the Firm shall: (i) immediately cease all activity; and (ii) (in addition to compliance with all other requirements of this Agreement) within forty-eight (48) hours assign, place and transmit the appropriate Closing Code on each Account such that the assigned code clearly and accurately identifies the status of each Account (including notice of any legal impediments that prevent contact with, or continued collection against, a Debtor) and promptly return these Accounts (along with any and all information related thereto, including, without limitation, the last known address and telephone number of each Debtor, and all information and documentation in support of the Closing Code) to MCM.

2.4.5   Record Keeping.   The Firm agrees to maintain true, complete and accurate records, instruments, agreements, correspondence and other documentation, irrespective of the median held, received or generated for a period of seven (7) years on all matters and activities: (i) related to or arising in connection with each Account; and (ii) arising out of or relating to this Agreement.

2.4.6   Credit Reporting.   The Firm shall not be permitted to report the Account status to any credit bureau reporting agencies, unless and until it receives the prior written approval of MCM, which approval may be withheld by MCM in its sole and absolute discretion.

2.4.7   Interest.   Unless prohibited by applicable law, rule or regulation, the Firm shall be permitted to charge interest on an Account in accordance with MCM's then current policies and procedures at such rates as permitted by applicable local, state and federal law.

2.5   **Recall of Accounts.**

2.5.1   Right to and Manner of Recalling Accounts.   MCM has the right to recall any or all Accounts assigned to the Firm at any time, for any reason or no reason, without any obligation to specify the reason for such recall.   In the event recalled Accounts are the subject of pending litigation, the Firm shall immediately notify MCM in writing identifying each of these Accounts, and the type and nature of the pending litigation with regard to each.   In the event an Account is recalled, the only remuneration of any kind whatsoever due the Firm shall be limited to that which it would be entitled, if any, under Section 3.4.4 of this Agreement.

2.5.2   Obligations Upon Notice of Account Recall.   In the event MCM recalls one or more Accounts, the Firm shall: (i) immediately cease all collection efforts on such Account(s); and (ii) within forty-eight (48) hours, add an appropriate Closing Code to the Account(s) designating it as recalled, close the Account(s), and return the Account(s) (along with any and all information related thereto, including, without limitation, the Debtor's last known address and telephone number, and all information and documentation in support of the Closing Code) to MCM.  Follow the recall of an Account, MCM shall have the right to notify the Debtor that the Account is no longer with the Firm, and that all future payments are to be sent directly to MCM.

## SECTION 3

## FINANCIAL PROVISIONS

3.1   **Establishment of Segregated Account.**   The Firm will establish and maintain in the name of MCM a restricted and segregated account with a federally insured financial institution of the Firm's choosing (the "Segregated Account"), at the Firm's sole expense, for the deposit of all Proceeds received by the Firm on all Accounts.

**3.2   Posting and Accounting of Proceeds.** The Firm agrees to deposit all Proceeds into the Segregated Account within twenty-four (24) hours of the receipt thereof by the Firm. In establishing and maintaining the Segregated Account, the Firm will take all steps necessary to permit the withdrawal, from time to time at MCM's sole control and discretion, by MCM, via electronic funds transfer or as otherwise stipulated by MCM, of all Proceeds contained in the Segregated Account. The Firm hereby expressly authorizes MCM to initiate electronic credit and debit entries for all monies contained in the Segregated Account from time to time. No Commissions, Court Costs or other amounts due the Firm may at anytime or under any circumstance be withdrawn from the Segregated Account, and without limiting the generality of the foregoing, the Firm acknowledges that it shall not be entitled to take any set-off against any Proceeds whatsoever. Unless otherwise instructed by MCM, or prohibited by law, Proceeds received by the Firm are to be applied against the amounts due on an Account first against Court Costs, then against interest, followed by principal and only then Attorney's Fees.

**3.3   Reporting and Error Handling.** The Firm is responsible for: (i) correctly posting all Proceeds to the Segregated Account; (ii) calculating and reporting to MCM on a daily basis a breakdown on an Account by Account basis of (A) Proceeds received and Court Costs paid, and (B) Commissions due in connection therewith; (iii) assigning the proper coding in connection with each posting; and (iv) making any necessary corrections within twenty-four (24) hours of its own discovery thereof or notification by MCM. From time to time, MCM will prepare and deliver to Firm an exception report identifying any open or outstanding issues or discrepancies arising out of any Account or any report relating thereto.

**3.4   Firm Commissions and Costs.**

**3.4.1   Standard Collection Commissions.** With respect to those Accounts for which the Firm receives Commissionable Collections, whether through voluntary or involuntary payments, the Firm is entitled to a Commission (less any taxes, if any, due and payable by MCM on such Commission) for services performed based on the Commissionable Collections while such Accounts are placed with the Firm. The payment of Commissions in accordance with the percentages and categories set forth in Exhibit "A" hereto (and by this reference made a part hereof) will be the only form compensation, fee or payment of any kind whatsoever owed or payable to the Firm under this Agreement, and any and all expenses such as postage, copying, and any other costs (except Court Costs to the limited extent provided for herein), taxes (including, without limitation, any income, sales, service or use taxes) and other expenses assessed, incurred or suffered in connection with this Agreement or any Third Party will be borne solely by the Firm and may not be deducted or set-off, for any reason, from the Proceeds or any other amounts otherwise recovered in connection with any Account or this Agreement. Commissions earned will be paid by MCM, via electronic funds transfer or check, no more than two (2) weeks after the applicable transaction is uploaded by the Firm to MCM and successfully processed by MCM. The Firm understands and agrees that MCM may, in its sole discretion, modify the Commission terms and amounts from time to time throughout the Term of this Agreement, and further agrees to either be bound by such new Commission terms and amounts as modified or terminate this Agreement in accordance with provisions set forth below. It is understood and agreed that MCM will provide no less than thirty (30) days notice of any modifications to the Commission terms or rates prior to the date the modifications are to become effective, upon receipt of which the Firm shall have ten (10) days to notify MCM in writing of its rejection thereof, and its intent to terminate this Agreement. The effective date of such termination shall be determined by MCM in its sole discretion, albeit under the existing Commission terms and amounts.

**3.4.2   Court Cost Handling.** Court Costs will be advanced by the Firm and reimbursed by MCM, via electronic funds transfer or check, no more than two (2) weeks after the applicable transaction is uploaded by the Firm to MCM and successfully processed by MCM. Prior to incurring any Court Costs, the Firm will evaluate each Account for which Court Costs are to be incurred to ensure that the Firm is not expending unreasonable Court Costs on an Account that is uncollectible. If the Firm fails to evaluate Accounts prior to incurring Court Costs or MCM determines the Firm is expending unreasonable Court Costs, and MCM terminates this Agreement for nonperformance of this obligation, the Firm shall not be entitled to reimbursement of any

Court Costs in connection with such Accounts, shall remit to MCM any reimbursement of any Court Costs in connection with such Account already received, and shall be responsible for ongoing Court Costs in connection with continued collection activities on such Accounts. This situation constitutes a limited exception to the provisions set forth in Sections 3.4.3 and 4.2 regarding the Firm's right to reimbursement of Court Costs upon termination of this Agreement.

        3.4.3   <u>Recall or Return of Accounts</u>. With respect to those Accounts returned to MCM for any reason, including but not limited to death of the Debtor, bankruptcy of the Debtor, or recall of the Account(s) by MCM, the Firm shall not be entitled to payment of any remuneration whatsoever, other than: (i) reimbursement of Court Costs, subject to the limitation set forth Section 3.4.2, properly incurred on such Accounts prior to its receipt of notice of the Debtor's death, the Debtor's bankruptcy, or MCM's intent to recall the Account(s); and (ii) payment of earned Commissions on Commissionable Collections received by the Firm prior to its receipt of notice of the Debtor's death, the Debtor's bankruptcy, or MCM's intent to recall the Account(s).

       3.5   <u>**Direct Pay Handling**</u>. In the event MCM receives three consecutive Direct Pays, MCM may recall the Account as provided for in Section 2.5, and the Firm's compensation on the recalled Account will be calculated in the manner set forth at Section 3.4.3 of this Agreement. The handling of Accounts on which a Direct Pay is received will be consistent with MCM's Direct Pay policy, as set forth in Exhibit "B" hereto, as such policy may be amended or modified by MCM from time to time.

**SECTION 4**

**TERM AND TERMINATION**

       4.1   <u>**Term**</u>. The term of this Agreement shall be for an initial one (1) year period starting on the Effective Date, and shall thereafter automatically renew for consecutive one (1) year periods (collectively the "Term"), unless earlier terminated pursuant to the terms hereof. This Agreement may be terminated for any or no reason by either party effective upon: (i) the provision of written notice given thirty (30) days prior to expiration of the initial or any renewal term; (ii) the mutual consent of the parties and then on such date mutually agreed upon; or (iii) the provision of one hundred eighty (180) days prior written notice to the other party. In addition, this Agreement shall automatically terminate ninety (90) days after the recall of all Accounts from the Firm and no additional Accounts are placed with the Firm within such ninety (90) day period. If the Firm fails to perform any of its obligations hereunder (whether or not such failure is material), or if MCM determines there has been an adverse change in the Firm's reputation, character, or condition, MCM may immediately terminate this Agreement by providing written notice of such termination to the Firm. Notwithstanding anything contained in this Agreement to the contrary, MCM shall be under no obligation whatsoever to: (x) place any Accounts with the Firm; or (y) maintain the placement of any Accounts then allocated to the Firm.

       4.2   <u>**Compensation Upon Termination**</u>. Upon termination of this Agreement for any or no reason, the Firm shall not be entitled to payment of any remuneration whatsoever, other than: (i) reimbursement of Court Costs, subject to the limitation set forth Section 3.4.2, properly incurred on Accounts prior to the effective date of termination; and (ii) payment of earned Commissions on Commissionable Collections received by the Firm prior to the effective date of termination. Upon termination of this Agreement for any or no reason, the Firms agrees to immediately deposit, without reduction or set-off of any kind, all Proceeds received on or prior to the effective date of termination into the Segregated Account for withdraw by MCM, and to forward all future Proceeds received after the effective date of termination to MCM by overnight carrier within twenty-four (24) hours of receipt thereof by the Firm without reduction or set-off of any kind.

       4.3   <u>**Post-Termination Obligations**</u>. Upon the termination of this Agreement for any or no reason, the Firm, at no charge to MCM, shall: (i) immediately cease all collection efforts on such Account(s); (ii) within forty-eight (48) hours, add an appropriate Closing Code to the Account(s), close the Account(s), and return the Account(s) (along with any and all information related thereto, including, without limitation, the Debtor's last known address and telephone number, and all information and

8

documentation in support of the Closing Code) to MCM; (iii) promptly provide MCM with copies of any and all complaints, judgments, or post-judgment filings, and any other information reasonably requested by MCM; (iv) promptly provide MCM with a substitution of attorney/counsel form or its equivalent prepared by the Firm and signed in blank; and (v) with respect to Account(s) that have been reduced to judgment, release any lien or satisfy the judgment associated therewith.

## SECTION 5

## INDEMNIFICATION

5.1 **Indemnification by Firm.** The Firm agrees to defend, indemnify and hold harmless MCM, Encore Capital Group, Inc., the MCM Owners, and each of their respective officers, directors, employees and agents (the "MCM Indemnified Parties") from any and all losses, claims, damages, expenses (including attorneys' fees) and costs suffered or incurred (whether suit is instituted or not) as a result of, arising out of, or otherwise relating in any way to: (i) the Firm's forwarding of Accounts to or its engagement of any Third Party, including, without limitation, the acts or omissions of any Third Party engaged or forwarded Accounts by the Firm, or any claims or demands for any sums due or allegedly due such a Third Party (regardless of how such sums or amounts may be characterized) for its services, or as a result of any damages, expenses or costs incurred or suffered by any such Third Party; (ii) any intentional, reckless, or negligent act(s) or omission(s) taken by or on behalf of the Firm (or its agents) including, but not limited to, any claims or complaints brought by or on behalf of any Debtor with respect to any of the methods, procedures, devices, or communications employed or made by Firm or its agents; (iii) the Firm's violation of any federal, state and/or local laws, rules or regulations applicable to the Firm and MCM, including but not limited to the Fair Debt Collection Practices Act, as amended, The Right to Financial Privacy Act of 1978, as amended, the Fair Credit Reporting Act, as amended, Gramm-Leach-Bliley Act, as amended, the Health Insurance Portability and Accountability Act of 1996, as amended, and the rules adopted under each such statute, or its breach of this Agreement; (iv) the Firm's malpractice; or (v) by reason of any claim, suit, or other adversary proceeding being instituted by any person based upon an allegation or assertion which, if true, would indicate the existence of any of the foregoing circumstances. The defense of any such action by the Firm must be handled by counsel acceptable to MCM, which will not be unreasonably withheld. The Firm agrees to promptly pay all losses, expenses (including attorneys' fees) and costs suffered or incurred as incurred, as well as all damages and costs awarded pursuant to a judgment or paid in any compromise or settlement of any such claim or suit. In the event the Firm is provided notice of such an action, but fails to undertake the defense in a timely manner, the Firm further agrees to pay: (x) any losses, damages, costs and expenses (including attorneys' fees) incurred or suffered by the MCM Indemnified Parties as incurred as a result of the Firm's failure to defend in a timely manner; and (y) any amounts agreed to by MCM as a compromise or settlement of any such claim or suit.

5.2 **Indemnification by MCM.** MCM agrees to defend, indemnify and hold harmless the Firm, and each of their respective officers, directors, employees and agents (the "Firm Indemnified Parties") from any and all losses, claims, damages, expenses (including attorneys' fees) and costs suffered or incurred (whether suit is instituted or not) as a result of or arising out of: (i) MCM's gross negligence or willful misconduct relating to an Account, including MCM's violation of any federal, state and/or local laws, rules or regulations, including but not limited to the Fair Debt Collection Practices Act, as amended, The Right to Financial Privacy Act of 1978, as amended, the Fair Credit Reporting Act, as amended, Gramm-Leach-Bliley Act, as amended, the Health Insurance Portability and Accountability Act of 1996, as amended, and the rules adopted under each such statute. MCM agrees to promptly pay all losses, expenses (including attorneys' fees) and costs suffered or incurred as incurred, as well as all damages and costs awarded pursuant to a judgment or paid in any compromise or settlement of any such claim or suit.

5.3 **Notice.** Both MCM and the Firm agree to promptly notify the other of any claim, demand, suit, or threat of suit of which that party becomes aware, or which the party reasonably believes may give rise to a right of indemnification under this Agreement; provided that the failure to provide the notice required does not relieve either party from any obligation it may have hereunder or otherwise, except to the extent the failure to provide the required notice materially prejudices the rights of such party. Each party agrees to provide reasonable cooperation in the defense of any such action, and in no event will either

9

party, except with the express prior written consent of the other party, consent to the entry of any judgment or enter into any compromise or settlement that either: (a) does not include, as an unconditional term, the grant by the claimant to such other party of a release of all liabilities, known or unknown, with respect to such claims; or (b) otherwise adversely affects the rights of such other party.

## SECTION 6

## MISCELLANEOUS PROVISIONS

6.1   **Confidentiality and Privacy.**

6.1.1   <u>Confidentiality of Data</u>.  The Firm understands and agrees that all Accounts, records, documents, and any Debtor or company related information provided to it by or through MCM constitutes proprietary and highly confidential information of MCM. The Firm agrees not to disclose, publish, or cause to be disclosed or published, any of this information nor will it use such information for any purpose beyond what is required to effectuate its obligations under this Agreement. The Firm shall comply with all MCM requirements regarding confidentiality, and shall take all commercially reasonable, but in no event less than legally required, measures to maintain the confidentiality of such information.

6.1.2   <u>Consumer Privacy</u>.  Without limiting the generality of the foregoing, the Firm agrees to protect, keep confidential and refrain from disclosing, to the extent required by applicable federal, state and local privacy laws, rules and regulations, including but not limited to the Gramm-Leach-Bliley Act ("GLB Act"), all information (including Nonpublic Personal Information, as that phrase is defined within the GLB Act) that relates or in any manner pertains to any Account, Debtor, or any other person whose identity or information is available to or otherwise obtained by the Firm as a result of this Agreement. Notwithstanding anything contained in this Agreement to the contrary, the Firm is not acquiring any right, title, interest, or license in or to such information.

6.1.3   <u>Confidential Agreement</u>.  The Firm agrees to keep the terms and conditions of this Agreement, and its existence, confidential from all third parties unless disclosure is approved by MCM in writing prior to the Firm making such disclosure.

6.1.4   <u>Responsibility for Access</u>.  Firm is solely responsible and liable for any and all access to and use of MCM's websites by any authorized user or any other person logging in under a user ID registered under Firm's name. Firm is responsible for maintaining the confidentiality of user ID(s) and password(s) issued to it. Firm shall immediately notify MCM if Firm becomes aware of any activity indicating Firm's user ID(s) or password(s) have been used to gain unauthorized access to MCM's websites or that MCM's websites have been compromised by someone acting through or on behalf of the Firm.

6.1.5   <u>Notification</u>.  In the event of any breach of Section 6.1 including, but not limited to, a Security Incident relating to Nonpublic Personal Information, Firm shall provide MCM with immediate notice thereof along with a detailed description of the nature and circumstances of the breach or incident and identification of the Debtors affected by such breaches or incidents. "Security Incident" means the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information, or interference with the Firm's system operations relating to the Firm's information systems.

6.1.6   <u>Equitable Relief</u>.  The Firm acknowledges the reasonableness of the covenants contained in this Section 6.1. Accordingly, the Firm agrees that in the event of a breach or threatened breach of any of the provisions of this Section 6.1, such breach or threatened breach will result in immediate and irreparable injury to MCM for which MCM will not have an adequate remedy at law, and therefore MCM shall be entitled, in addition to all other remedies available to it, to a decree of specific performance of the breached or threatened breached covenant, and to a

temporary and permanent injunction enjoining such breach or threatened breach, without posting bond or furnishing similar security. In addition to all other relief or damages to which MCM may be entitled by virtue of any breach or threatened breach of this Section 6.1, the Firm shall indemnify MCM for all attorneys fees incurred in seeking to enforce this Section 6.1. The Firm hereby expressly acknowledges and agrees that the provisions of this Section 6.1 are in addition to and independent of any agreements or covenants contained in any other agreement between the Firm and MCM.

6.2     **Audit.** The Firm agrees that MCM shall have the right from time to time, during normal business hours, with or without prior notice, to review, inspect, audit, and/or copy any and all documents maintained by the Firm with respect to the Account(s). The Firm agrees to cooperate with MCM in the conduct of an audit and to provide MCM with access to all Accounts (and records and information relating thereto), equipment, staff, or other resources without charge to MCM. If any audit concludes that Firm is not in compliance with the terms and conditions of this Agreement, then MCM may invoice the Firm for any and all expenses and fees incurred by MCM in connection with the discovery of any noncompliance. Notwithstanding anything contained in this Agreement to the contrary, MCM shall retain all other remedies available to it at law or in equity or under this Agreement.

6.3     **Counterparts; Facsimile Signatures.** This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of them together shall constitute one and the same instrument. Facsimile signatures are hereby deemed to be an original signature.

6.4     **Notices.** Any notices required to be provided by this Agreement must be provided in writing and delivered via certified or registered mail, postage prepaid, return receipt requested, or by a nationally recognized overnight courier, addressed as follows (or to such other address as such person may have last designated by appropriate notice to the other party):

Midland Credit Management, Inc.
Attn: General Counsel
8875 Aero Drive,
Suite 200
San Diego, CA 92123

Trauner, Cohen & Thomas:
2880 Dresden Dr.
Atlanta, GA 30341

Each such notice is effective three business days after such communication is deposited in the mails, or the next business day if sent by overnight courier.

6.5     **Entire Agreement.** This Agreement, including any exhibits attached hereto and documents incorporated by reference (as the same may be modified by MCM, or as revised or supplemented by the parties, in the future as permitted pursuant to the terms hereof) constitutes the entire agreement between MCM and the Firm with respect to the subject matter hereof. Except as otherwise expressly provided in this Agreement, all prior proposals, understandings, and other communications, whether oral or written, between MCM and the Firm that relate to the subject matter of this Agreement are hereby superseded, merged and revoked. Other than modifications by MCM to any Procedure or the fee schedule, the modification of which are expressly permitted to be made by MCM in its sole and absolute discretion and without prior notice, this Agreement may not be amended, modified or altered except by a written instrument duly executed by both parties.

6.6     **Severability.** If any provision of this Agreement is determined to be invalid, illegal or unenforceable by any governmental entity, or court of competent jurisdiction, the remaining provisions of this Agreement will remain in full force and effect.

11

**6.7    Applicable Law/Venue.** The laws of the state of California, without regard to conflicts of law provisions, govern all matters arising out of or relating to this Agreement including, without limitation, its validity, interpretation, construction, performance and enforcement. The parties agree to the exclusive jurisdiction and venue of the applicable state and federal courts in San Diego, California.

**6.8    No Third Party Beneficiaries.** This Agreement shall not confer any rights or remedies upon any Third Party, except the MCM Owners and their respective successors and assigns shall be third party beneficiaries; provided, however, that the provision of Section 5.0 shall also inure to the benefit of the indemnified parties thereunder.

**6.9    Survival.** The rights, limitations and obligations of the following Sections shall survive the expiration or termination of this Agreement: 1, 2.2.2.2, 2.3, 2.4.1, 2.4.4, 2.4.5, 2.5, 3.3, 3.4, 3.5, 4, 5, and 6.

**6.10    Construction.** The headings are for convenience only and are not substantive provisions of this Agreement. The parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as a jointly drafted contract, and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of this Agreement.

**6.11    Waiver.** No party shall be deemed to have waived any of its rights or remedies under this Agreement unless such waiver is in writing and signed by such party and then only to the extent specifically recited. No failure to exercise and no delay or omission in exercising any right, remedy or recourse on the part of either party shall operate or be deemed as a waiver of such right, remedy or recourse hereunder or preclude any other or further exercise thereof. A waiver or release of any right on any one occasion shall not be construed as continuing, as a bar to, or as a waiver or release of any right, remedy or recourse on any subsequent occasion. All rights and remedies of each party pursuant to this Agreement are cumulative and concurrent with any rights and remedies provided at law or in equity and may be exercised singly, successively or concurrently at the sole discretion of such party and as often as occasion therefor may exist.

**6.12    Assignment.** This Agreement may not be assigned, subcontracted, or otherwise transferred by Firm (whether voluntarily, involuntarily, by operation of law, merger, or via any other means) to anyone without the express written consent of MCM, which consent may be with held for any or no reason.

**6.13    Future Assurances.** During the Term and after the expiration or termination of this Agreement, the Firm agrees to do or undertake such further acts and to deliver such additional documents as are reasonably necessary to: (i) ensure the orderly and timely exchange or transfer of Accounts, documents and information, and (ii) otherwise effectuate its obligations under this Agreement or the termination hereof.

**6.14    Relationship of Parties.** This Agreement will not be deemed to create an agency, employment, partnership or joint venture between the parties. The Firm is an independent contractor. The Firm does not have any authority to bind, enter into agreements or incur obligations on behalf of MCM. Neither the Firm nor its employees or agents can be considered employees of MCM for any purpose including, but not limited to, benefit programs, bonuses, income tax withholding, unemployment benefits, disability benefits, employment taxes or worker's compensation insurance. The Firm shall ensure that all of its employees, agent and subcontractors (if allowed), shall be legally authorized and entitled to work in the United States and that all required paperwork indicating such authorization have been obtained.

**6.15    Negative Covenants.** Unless consented to in writing by MCM, the Firm agrees not to: (i) create, incur or suffer to exist in favor of itself or any Third Party, any pledge, lien, security interest, assignment, transfer or other encumbrances upon any of the Accounts including, but not limited to, the records and Proceeds relating to or arising in connection therewith; and (ii) accept or receive or agree to

accept or receive from a Third Party, any rebate, refund, commission, compensation, kickback or rake-off as a result of, or in any way relating to or arising out of, the Accounts.

6.16    Attorneys' Fees.  Should any litigation be commenced (including any proceedings in a bankruptcy court) between the parties hereto or their representatives concerning any provision of this Agreement or the rights and duties of any person or entity hereunder, the prevailing party in such proceeding shall be entitled, in addition to such other relief as may be granted, its reasonable attorneys' fees and court costs resulting from or related to such litigation.

[The balance of this page is intentionally left blank.]

**IN WITNESS WHEREOF**, each of the parties has caused this Agreement to be executed in duplicate originals by its duly authorized representative as of the Effective Date.

Midland Credit Management, Inc.

By: _____

Name: RON J ECKHARDT

Title: EVP + GM

Trauner, Cohen & Thomas

By: _____

Name: _____

Title: _____

14