UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ERIKA SUQUILANDA,

                              Plaintiff,

                -against-


COHEN & SLAMOWITZ, LLP, ENCORE
CAPITAL GROUP, INC., MRC
RECEIVABLES CORPORATION and MIDLAND
CREDIT MANAGEMENT, INC.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-8-11
```

10 Civ. 5868 (PKC)


MEMORANDUM
AND
ORDER

P. KEVIN CASTEL, United States District Judge:

            Erika Suquilanda asserts multiple claims against Cohen & Slamowitz, LLP

("Cohen"), Encore Capital Group, Inc. ("Encore"), MRC Receivables Corporation ("MRC"), and

Midland Credit Management, Inc. ("MCM") on behalf of herself and other similar situated

individuals for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692

et seq. In the First Amended Class Action Complaint (the "Amended Complaint") filed

November 5, 2010, plaintiff alleges that defendants violated sections 1692e and 1692f of the

FDCPA while attempting to collect an alleged debt due and owing to Citibank/Associates

("Citibank"). (Docket # 18.) Defendants now move to dismiss the Amended Complaint,

pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim or, in the alterative, seek a

judgment on the pleadings, pursuant to Rule 12(c), Fed. R. Civ. P.[1] (Docket # 20, 25.) MRC,

---

[1] The defendants have not yet answered the Amended Complaint. Therefore, I have disregarded their
alternative request for judgment on the pleadings. Fed. R. Civ. P. 12(c) ("After the pleadings are
closed . . . a party may move for judgment on the pleadings.").

MCM and Encore (collectively, the "Encore Defendants") filed a joint motion to dismiss.[2]

(Docket # 25.)   The Encore Defendants also seek attorneys' fees pursuant to 15

U.S.C. § 1692k(a) and ask the Court to impose sanctions on plaintiff pursuant to Rule 11, Fed. R.

Civ. P.  (Docket # 25; Encore Defs. Mem. in Support at 9, 11.)  For the reasons explained below,

the motions to dismiss are granted in part and denied in part.  The Encore Defendants' requests

for sanctions and attorneys' fees are denied.

BACKGROUND

The following facts are taken from plaintiff's Amended Complaint.  For the

purposes of this motion, all non-conclusory factual allegations of the non-movant are accepted as

true, Iqbal v. Ashcroft, 129 S. Ct. 1937, 1949-50 (2009), and all reasonable inferences are drawn

in favor of the non-movant.  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

The allegations in the Amended Complaint stem from plaintiff's default on

payment of a debt owed to Citibank.  (Am. Compl. ¶ 68.)  According to the Amended

Complaint, Encore purchased plaintiff's consumer debt from Citibank as part of a portfolio of

defaulted consumer debt. (Am. Compl. ¶¶ 22, 71, 114.)  After the purchase, MRC, Encore's

indirect subsidiary, held title to the purchased assets.  (Am. Compl. ¶¶ 33, 115.)  Pursuant to the

terms of a servicing agreement between MRC and MCM (the "Servicing Agreement"), MCM

was "responsible for managing and servicing the collection of the debts owned by Encore's debt-

owning entities such as MRC, NCC-2 Corp., or Midland Funding, LLC."  (Am. Compl. ¶ 38.)

Plaintiff alleges that MCM outsourced the collection of her debt to Cohen.  (Am.

Comp. ¶ 67.)  A collection agreement between MCM and Cohen (the "Collection Agreement")

"control[led] the manner in which the [f]irm[ ] . . . conduct[ed] collection activities on behalf of

MCM in connection with the accounts owned by MRC" and "provide[d] for MCM's exercise of

---

[2] Defendants MRC and MCM are wholly-owned subsidiaries of Encore.  (Am. Compl. ¶ 9.)

material control over each aspect of [Cohen's] collection efforts."   (Am. Compl. ¶¶ 46, 51, 67.)

As part of the debt collection process, "[d]efendants" sent plaintiff a letter dated April 1, 2010

(the "April 1 Letter"), informing plaintiff that she owed $1,540.48 in outstanding debt to

Cohen's client.[3]  (Am. Compl. ¶¶ 72-73.)  The April 1 Letter was a standardized form letter

"produced by [d]efendants' concerted efforts [using] integrated or shared technologies including

computer programs, mailing houses, and electronic databases." (Am. Compl. ¶¶ 76-79.)  The

April 1 Letter provided:

> Tax season is here, and hopefully you will be receiving a big refund check.  Our firm is pleased to offer you a **savings of 50% off** on the outstanding balance owed on this account.  Your balance due is currently $1,540.48; however, our client will accept the reduced sum of **$770.24** if you pay this amount on or before April 27, 2010.  Upon receipt and clearance of your payment, your account will be deemed settled in full by our client.
>
> Payments should be forwarded directly to this office with the payment stub below.  Our office accepts Western Union, Monygram [sic], Mastercard, Visa, Discover Card and checks via telephone, or visit our website at WWW.CSLAWLLP.COM to make a payment online.
>
> We urge you to take advantage of this special opportunity to settle your account for pennies on the dollar.  Kindly note that this offer to settle is void if you are refinancing or selling your house or if we have restrained your bank account.
>
> Very Truly Yours,
>
> Cohen & Slamowitz, LLP

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

(Am. Compl. ¶ 73)(emphasis in original).   This information was on letterhead bearing the name

"Law Offices of Cohen & Slamowitz, LLP." (Am. Compl. ¶ 73.)  The April 1 Letter listed

"Midland Credit" as the creditor, Citibank/Associates as the original creditor, and included an

account number, Cohen's file number, and an index number.  (Am. Compl. ¶ 73.)

---

[3] An image of the April 1 Letter is included in the Amended Complaint at paragraph 73.

On April 26, 2010, plaintiff called Cohen to discuss the offer set forth in the April 1 Letter. (Am. Compl. ¶ 74.) Plaintiff was "informed that [d]efendants had already submitted documentation to [p]laintiff's bank to seize her account" and "it was too late to accept the offer." (Am. Compl. ¶ 74.) Indeed, documents were served on plaintiff's bank—defendant served an Information Subpoena and Retraining Notice (the "Restraining Notice") "alleging that [p]laintiff owed $1,127.80." (Am. Compl. ¶ 75.) It is unclear from the Amended Complaint when the Restraining Notice was served on plaintiff's bank.

Three days after the conversation between plaintiff and Cohen, plaintiff received a letter dated April 29, 2010 (the "April 29 Letter"). (Am. Compl. ¶ 119.) The April 29 Letter advised plaintiff that her account was settled in full. (Am. Compl. ¶ 119.) The April 29 Letter listed MRC Receivables Corp. as the creditor, Citibank/Associates as the original creditor, an account number, Cohen's file number, and an index number. (Am. Compl. ¶¶ 73, 119-20.) The account information listed in the April 29 Letter, with the exception of the name of the creditor, "matche[d] exactly with [the account information] contained in the April 1 [Letter] . . . ." (Am. Compl. ¶ 120.)

The Amended Complaint also makes specific allegations as to how MCM and Encore had significant control over the collection practices Cohen used to collect MRC's debts. The Amended Complaint alleges that the Collection Agreement "require[d] the [f]irm[ ] to abide by, and conduct all of [its] activities in a manner consistent with the then current [Midland Account Handing] Procedures . . . ." (Am. Compl. ¶ 47.) The Collection Agreement also required the firm to complete daily reporting requirements regarding "communications or attempted communications between the firm[ ] and consumers and/or others" and to "maintain true, complete and accurate records . . . ." (Am. Compl. ¶¶ 54, 58.) Plaintiff also alleges that

4

MCM provided "to various law firms collecting debts pursuant to the [c]ollection [a]greements" a "Legal Outsourcing Firm Training Manual" and required Cohen to complete "MCM's Daily Invoicing Report[s]" that tracked account activity and payments.  (Am. Compl. ¶¶ 55, 59.)

With respect to Encore in particular, plaintiff alleges that Encore's management controlled "the day-to-day operations" of Cohen's efforts to collect "MRC's accounts on behalf of MCM pursuant to the Collection Agreement[ ]" and was "responsible for setting the strategic direction, managing all legal outsourcing operations and personnel, driving process improvements, managing the [profits and losses], and ensuring that Encore's suppliers/vendors are competitive." (Am. Compl. ¶¶ 61, 63.)

The Amended Complaint purports to assert "four counts" against defendants. Plaintiff asserts three counts individually and on behalf of a class of individuals, and one count— count four—solely as an individual.[4]  Generally, the Amended Complaint alleges that defendants made false or misleading misrepresentations and used unfair practices to collect plaintiff's debt in violation of the FDCPA.  The class allegations stem from plaintiff assertion that the April 1 Letter defendants sent to plaintiff was a mass-mailed form letter substantially similar to thousands of other collections letters defendants sent to other debtors.  (Am. Compl. ¶¶ 76, 79.) For the purpose of this motion, I have analyzed the four counts as having been asserted by plaintiff individually.

---

[4] Plaintiff has asserted claims on behalf of a class of individuals defined as follows:  "All persons located in the Second Circuit who, within one year before the date of the original complaint, received a letter from 'Law Offices of Cohen & Slamowitz, LLP' identifying Citibank/Associates as the original creditor and 'Midland Credit' as the creditor."  (Am. Compl. ¶ 80.)

DISCUSSION

I.  The FDCPA

Congress enacted the FDCPA "with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.' " Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692e).  The FDCPA establishes a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e. Section 1692e sets forth a non-exhaustive list of practices that fall within this ban.  See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993) ("a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fit within any of the subsections of § 1692e").  The FDCPA also prohibits a debt collector from employing "unfair or unconscionable means to collect" a debt and sets forth a non-exhaustive list of certain conduct that is "unfair or unconscionable."  15 U.S.C. § 1692f; see also Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006).

Generally, in order for a plaintiff to recover under the FDCPA, a plaintiff must satisfy three threshold requirements: (1) the plaintiff must be a "consumer," (2) the defendant must be a "debt collector," and (3) the defendant must have committed some act or omission in violation of the FDCPA.  See 15 U.S.C. § 1692e-f; see also Hess v. Cohen & Slamowitz LLP, 637 F.3d 117, 120 (2d Cir. 2011) (evaluating these factors); Murphy v. Bronson, Cawley, & Bergmann, LLP, 2011 WL 2413447, at *6 (S.D.Cal. June 13, 2011) (citing Robinson v. Managed Accounts Receivable Corp., 654 F. Supp. 2d 1051, 1057 (C.D.Cal. 2009) (listing these elements as threshold requirements).  Whether a collection letter violates the FDCPA may be

decided as a matter of law.  See Miller v. Wolpoff & Abramson, L.L.P, 321 F.3d 292, 309-11 (2d

Cir. 2003); Herzlinger v. Nichter, 2011 WL 1434609, at *4 (S.D.N.Y. Feb. 9, 2011); Terran v.

Kaplan, 109 F.3d 1428, 1432 (9th Cir. 1997) ("Our conclusion that the determination of whether

a collection letter violates section 1692g is a question of law that we review de novo is buttressed

by the rationale behind our de novo review standard for contracts and other written instruments,

including collective bargaining agreements and trust agreements."); McMillan v. Collection

Professionals Inc., 455 F.3d 754, 758 (7th Cir. 2006) (internal citations, quotations and

alterations omitted) ("In the context of a § 1692g claim, we have stated that how a particular

notice affects its audience is a question of fact, which may be explored by testimony and devices

such as consumer surveys.   However, as a matter of law, we shall not entertain a plaintiff's

bizarre, peculiar, or idiosyncratic interpretation of a collection letter.").

 The FDCPA provides, in relevant part, as follows:

§ 1692e.  False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or
means in connection with the collection of any debt. Without limiting the general
application of the foregoing, the following conduct is a violation of this
section: . . .

 (2) The false representation of—
  (A) the character, amount, or legal status of any debt . . .

 (3) The false representation or implication that any individual is an attorney or
 that any communication is from an attorney. . .

 (10) The use of any false representation or deceptive means to collect or
 attempt to collect any debt or to obtain information concerning a consumer . . .

 (14) The use of any business, company, or organization name other than the
 true name of the debt collector's business, company, or organization . . . .

§ 1692f.  <u>Unfair practices</u>

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . .

15 U.S.C. § 1692e-f.

In determining whether a debt collection notice violates the FDCPA, the notice is judged by the "least sophisticated consumer" test.  See, e.g., Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005); Clomon, 988 F.2d at 1318; Schweizer v. Trans Union Corp., 136 F.3d 233, 237 (2d Cir. 1998).  The "least sophisticated consumer" test is an objective standard that "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd."  Clomon, 988 F.2d at 1318.  In applying this standard, a collection letter is deceptive if it "can be reasonably read to have two or more different meanings, one of which is inaccurate."  Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996) (citing Clomon, 988 F.2d at 1319).  Only reasonable interpretations are to be considered and the "least sophisticated consumer" test does not require acceptance of "every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice."  Schweizer, 136 F.3d at 237 (citation omitted); accord Clomon, 988 F.2d at 1320.  "[C]ourts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices."  Miller, 321 F.3d at 310 (quoting Clomon, 988 F.2d at 1319).

General principles of agency law form the basis of vicarious liability under the FDCPA.  See, e.g., Herzlinger, 2011 WL 1434609, at *9 ("Under general principals of agency— which form the basis of vicarious liability—the principal must exercise control over the conduct or activities of the agent."); Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1173 (9th Cir. 2006) (same).  Courts have concluded that where the principal is a "debt

collector," the principal may be liable for its agent's FDCPA violations.  See e.g., Pollice v. Nat'l

Tax Funding, L.P., 225 F.3d 379, 404-05 (3rd Cir. 2000) ("Thus, we conclude that NTF—which

itself meets the definition of 'debt collector'—may be held vicariously liable for CARC's

collection activity.  We believe this is a fair result because an entity that is itself a 'debt

collector'—and hence subject to the FDCPA—should bear the burden of monitoring the

activities of those it enlists to collect debts on its behalf."); see also Fox v. Citicorp Credit

Services, Inc., 15 F.3d 1507, 1515-16 (9th Cir. 1994) ("In order to give reasonable effect to

section 1692i, we must conclude that Congress intended the actions of an attorney to be imputed

to the client on whose behalf they are taken."); Wadlington v. Credit Acceptance Corp., 76 F.3d

103, 108 (6th Cir. 1996) (declining to impose vicarious liability under the FDCPA on an entity

who was not a debt collector).

II.  Motion To Dismiss Standard

        Rule 8(a)(2), Fed. R. Civ. P., requires "a short and plain statement of the claim

showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the

. . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (ellipsis

in original).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the

grounds upon which the claims rest, through factual allegations sufficient to raise a right to relief

above the speculative level.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.

2007) (quoting Twombly, 127 S. Ct. at 1965).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Achcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "The

plausibility standard . . . asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1949-50. The Supreme Court has described the motion to dismiss standard as encompassing a "two-pronged approach" that requires a court first to construe a complaint's allegations as true, while not bound to accept the veracity of a legal conclusion couched as a factual allegation. Id. Second, a court must then consider whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Although the Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. See Int'l Audiotext Network, Inc. v. AT&T, 62 F.3d 69, 72 (2d Cir. 1995).

SECTION 1692E CLAIMS

I.  Using the Name "Law Offices of Cohen & Slamowitz, LLP" Does Not State A Claim for Relief under Section 1692e(14)

The Amended Complaint alleges that defendants violated section 1692e(14) by improperly listing Cohen's name in the April 1 Letter as "Law Offices of Cohen & Slamowitz, LLP" rather than only using Cohen's "true name" in which it was licensed to do business as a debt collector, "Cohen & Slamowitz, LLP." (Am. Compl. ¶¶ 78, 100-105.) Assuming, arguendo, that a debt collector's "true name" for purposes of the FDCPA is the name under which the debt collector is licensed to do business, plaintiff has pled a cognizable violation of section 1692e(14) if the April 1 Letter can be reasonably read to indicate that the "least sophisticated consumer" would be confused as to what entity was acting to collect plaintiff's

debt.[5]  See Greco, 412 F.3d at 363 (explaining that collection notice violations of the FDCPA are judged by the "least sophisticated consumer" test); see also Gutierrez v. AT&T Broadband, LLC, 382 F.3d 725, 740 (7th Cir. 2004) ("[T]he FDCPA's focus is not on whether the name used by the creditor is permitted by law, but on whether the name used results in the debtor's deception in terms of what entity is trying to collect his debt.").

Here, the April 1 Letter is signed "Cohen & Slamowitz, LLP" and the detachable payment stub at the bottom is addressed to "Cohen & Slamowitz, LLP."  (Am. Compl. ¶ 73.) As a matter of law, using both of these names would not confuse the least sophisticated consumer into believing that these are two separate entities.  The names "Cohen & Slamowitz" and "Law Offices of Cohen & Slamowitz" are substantially similar.  See Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 236-37 (2d Cir. 1998) (acknowledging, in the context of determining whether a creditor was subject to the FDCPA under the false name exception, that the relatedness of two different entities may be apparent based on the similarity of their names). Plaintiff does not allege that Cohen ever sent her a correspondence that failed to identify itself using the name under which it was licensed to do business, "Cohen & Slamowitz, LLP," nor does she allege that Cohen took any other action that would mislead someone into believing that these were separate entities.  Because the April 1 Letter would not confuse the least sophisticated consumer into believing that two separate entities were attempting to collect her debt and the April 1 Letter included the name "Cohen & Slamowitz, LLP," the name under which it was licensed to do business, plaintiff has not pled a cognizable violation of section 1692e(14). Accordingly, plaintiff's claim that the April 1 Letter violates 15 U.S.C. § 1692e(14) is dismissed.

---

[5] Courts have disagreed as to what a debt collector's "true name" is under the FDCPA.  See e.g., Boyko v. American Intern. Group, Inc., 2009 WL 5194431, at *6 (D.N.J. Dec. 23, 2009) (explaining that "[w]hat constitutes a debt collector's "true name" is not defined by statute or the relevant legislative history" and noting the disagreement among courts as to whether a debt collector's "true name" is the name in which it is licensed to conduct business or its trade name by which it is commonly referred).

II.  Using "Law Office of Cohen & Slamowitz" Letterhead States a Claim for Relief under Section 1692e(3)

Plaintiff also alleges that by sending the April 1 Letter on "Law Offices of Cohen & Slamowitz" letterhead, defendants falsely represented or implied that an attorney was involved in the debt collection process when Cohen had not "conduct[ed] any meaningful review of the accounts." (Am. Compl. ¶ 77, 106-07.)   She alleges that this was a deceptive and misleading tactic designed to create additional leverage in recovering the outstanding debt.[6]  (Am. Compl. ¶¶ 106-07.)

In addressing similar allegations asserted under the FDCPA, the Second Circuit has explained as follows:

> In Miller and Clomon, we established that a letter sent on law firm letterhead, standing alone, does represent a level of attorney involvement to the debtor receiving the letter. And if the attorney or firm had not, in fact, engaged in that implied level of involvement, the letter is, therefore, misleading within the meaning of the FDCPA. But of course, the implied level of attorney involvement is just that—implied. The letter's representation to the debtor is a consequence of the letter's content and presentation. And so, in these cases, we observed that a properly constructed letter with different presentation or content might connote far less actual attorney involvement, thereby satisfying the FDCPA's requirements.

Greco, 412 F.3d at 364 (emphasis in original); see also Miller, 321 F.3d at 301, 305-06 (concluding that summary judgment was prematurely granted as to claims that debt collection letter signed by a law firm on law firm letterhead that contained no disclaimer as to attorney involvement was misleading within the meaning of the FDCPA); Clomon, 988 F.2d at 1321 ("[T]he use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of

---

[6] Plaintiff does not specifically allege that defendants violated subsection (3) of section 1692e in the Amended Complaint.  However, she does allege that defendants violated section 1692e in general and cites to Clomon v. Jackson in the Amended Complaint.  (Am. Compl. ¶¶ 77, 106-07, 141).  Clomon addresses similarly alleged conduct as violating section 1692e(3).

the debtor to whom the letter was sent.")  An implication of attorney involvement may be

overcome by including "a clear disclaimer explaining the limited extent of [attorney]

involvement in the collection of [the] debt." Greco, 412 F.3d at 365.

   Here, plaintiff has alleged that defendants used law firm letterhead to send a debt

collection notice without an attorney conducting any meaningful review.  (Am. Compl. ¶¶ 77-78,

106-08.)  No disclaimer was included in the April 1 Letter.  (Am. Compl. ¶ 73.)  Thus, plaintiff

has plausibly alleged a section 1692e(3) violation.  See Miller, 321 F.3d at 300-07; Greco, 412

F.3d  at 364 -365.

III. Failing to Correctly Identify the Creditor States A Claim for Relief under Section
  1692e(10)

   Count two of the Amended Complaint alleges that defendants violated section

1692e(10) by falsely listing "Midland Credit" as the creditor in the April 1 Letter, rather than

"MRC Receivables Corporation"—the creditor who held legal title to the debt.  (Am. Compl. ¶¶

78, 111-119.)  Plaintiff asserts that using the name "Midland Credit" is particularly misleading

because "no person or entity is registered to do business in New York State as 'Midland Credit' "

and MCM was never plaintiff's creditor.[7]  (Am. Compl. ¶¶ 118, 121.)  Cohen argues that these

allegations should be dismissed because the error would not confuse the least sophisticated

consumer because the account number, original creditor, file number, and index number

referenced in the April 1 Letter and the April 29 Letter are the same.  (Cohen Mem. in Support at

9.)

   Plaintiff's allegation that she received a collection letter that falsely listed the

creditor as "Midland Credit" rather than "MRC Receivables Corporation" states a claim for

---

[7] Plaintiff does acknowledge that Midland Credit Management, Inc. and Midland Credit Corp. are
registered entities in New York.  (Am. Compl. ¶ 122.)

relief.[8] If the April 1 Letter falsely listed "Midland Credit," an unregistered entity that did not

own plaintiff's debt, and the April 29 Letter listed a different creditor, the least sophisticated

consumer could be confused as to which entity was the creditor.   See Russell, 74 F.3d at 36

(concluding that a letter sent subsequent to a validation notice violated section 1692e where "it

advance[d] a message that is open to an inaccurate yet reasonable interpretation by the consumer,

and is therefore deceptive as a matter of law."); see also Sparkman v. Zwicker & Assocs., P.C.,

374 F. Supp. 2d 293, 301-02 (E.D.N.Y. 2005) (granting plaintiff summary judgment in a

1692g(a)(2) claim and explaining that "[t]he least sophisticated consumer would not deduce from

reading the [c]ollection [l]etter that the name of the creditor seeking collection is 'The

Bureaus' "); Schneider v. TSYS Total Debt Mgmt., Inc., 2006 WL 1982499, at *4 (E.D.Wis.

July 13, 2006) (denying motion to dismiss in 1692g(a)(2) claim where plaintiff alleged that

defendants listed "Target" as the creditor rather than the full name of the creditor); Hepsen v.

J.C. Christensen and Assocs., Inc., 2009 WL 3064865, at *5 (M.D.Fla. Sep. 22, 2009)

(concluding that the defendant violated 1692e(10) by incorrectly listing the name of the current

creditor); cf. McLain v. Gordon, 2010 WL 3340528, at *7-8 (W.D. Wash. Aug. 24, 2010)

(concluding on a motion for summary judgment that defendant's representation that "MRC

Receivables Corp." was the creditor rather than "Midland Credit Management, Inc." "while

false, was not material, and therefore not actionable" where plaintiff admitted that she was not

confused as to who was the creditor, but noting that under a different set of facts, such as where a

debtor has multiple outstanding debts, this conduct may be actionable).  At this juncture, the

Court cannot conclude that the least sophisticated consumer would not be confused as to which

---

[8] Plaintiff does not allege that the April 1 Letter was a "validation notice," as described in section 1692g, which is subject to that provision's notice requirements.

14

entity owned plaintiff's debt.  Thus, plaintiff has plausibly alleged a violation of section 1692e(10).

IV. Providing Plaintiff Conflicting Statements Regarding the Amount of Her Outstanding Debt States a Claim for Relief under Section 1692e(2)(A)

In count four, plaintiff alleges that defendants violated section 1692e(2)(A) by falsely representing the amount of her debt.  Specifically, she alleges that defendants "provided [her]" conflicting statements listing the amount of her debt.  (Am. Compl. ¶ 138.)  The Restraining Notice served on her bank stated that she owed $1,127.80 and the April 1 Letter listed her outstanding debt as $1,540.48.  (Am. Compl. ¶¶ 73, 75.)  These conflicting statements could confuse the "least sophisticated consumer" as to the amount of debt owed.  Accordingly, these allegations state a claim for relief under section 1692e(2)(A).

Plaintiff also alleges that the settlement offer extended in the April 1 Letter was misleading because Cohen restrained her bank account after she received the April 1 Letter.  (Am. Compl. ¶¶ 74, 139-40.)  The April 1 Letter informed plaintiff that "this offer to settle is void if . . . we have restrained your bank account."  (Am. Compl. ¶ 73.)   Plaintiff alleges that when she telephoned Cohen on April 26, 2010 to discuss the offer contained in the April 1 Letter, she was informed that it was too late to accept the offer because "[d]efendants had already submitted documentation to [her] bank to seize her account."  (Am. Compl. ¶ 74.)

The April 1 Letter did not represent to plaintiff that her bank account would not be restrained before April 27, 2010; rather, it extended plaintiff a settlement offer that included, as a condition precedent to acceptance, a requirement that her bank account be unrestrained.  See McLain, 2010 WL 3340528, at *5 (analyzing a claim asserted under 1692e(2)(A) and noting that paying the settlement amount by the deadline set in an offer letter was a condition precedent to accepting the offer).  Plaintiff does not allege that her bank account was unrestrained when she

15

attempted to accept the offer extended in the April 1 Letter.  Because the allegations fail to

plausibly allege how the April 1 Letter contained false, deceptive or misleading representations

that would confuse the "least sophisticated consumer," this claim is dismissed.  See Russell, 74

F.3d at 35 (citing Clomon, 988 F.2d at 1319) (explaining that in applying the "least sophisticated

consumer" test, a court is required to determine whether the collection letter "can be reasonably

read to have two or more different meanings, one of which is inaccurate.")

SECTION 1692F CLAIMS ARE DISMISSED

Count three alleges that defendants used "unfair or unconscionable means to

collect or attempt to collect" plaintiff's debt, in violation of 15 U.S.C. § 1692f, by "engaging in

the grossly negligent ultra-high volume collection of consumer debts in a manner which exhibits

near total disregard for the rights of [p]laintiff and the members of the putative class."  (Am.

Compl. ¶ 132.)  This general allegation fails to allege how defendants' collection practices are

unfair or unconscionable and does not satisfy the Twombly pleading standard.  Accordingly, this

claim is dismissed.

Count three also alleges that defendants violated section 1692f's general prefatory

language that prohibits unfair or unconscionable means to collect or attempt to collect a debt by

using the name "Law Offices of Cohen & Slamowitz, LLC" in the April 1 Letter sent to plaintiff.

(Am. Compl. ¶ 133.)  Where the allegations do "not identify any misconduct beyond that which

[p]laintiff[ ] assert[s] violate other provisions of the FDCPA," plaintiff has not stated a claim for

relief under section 1692f.   See Foti, 424 F. Supp. 2d at 667 (dismissing plaintiff's claims

asserted under section 1692f on a motion to dismiss where the allegations stated a claim for relief

under either 1692g or 1692e); see also Tsenes v. Trans-Cont'l Credit and Collection Corp., 892

F. Supp. 461, 466 (E.D.N.Y. 1995) (concluding that the plaintiffs failed to state a cause of action

16

under 1692f where "the Complaint [wa]s devoid of support for the contention that the defendant engaged in practices that were 'unfair' or 'unconscionable' within the meaning of . . . section [1692f]" because "all the allegations in the Complaint support claims asserted under either §§ 1692g or 1692e."); Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521, 528 (E.D.Pa. 1996) (declining to declare conduct unlawful under section 1692f's general provision where it found that the conduct failed to comply with section 1692g). Here, plaintiff has not identified any misconduct beyond that which she asserts violates section 1692e of the FDCPA. Accordingly, her allegation that defendants violated section 1692f by sending the April 1 Letter on letterhead bearing the name "Law Offices of Cohen & Slamowitz, LLP" is dismissed.

## CLAIMS AGAINST THE ENCORE DEFENDANTS

The Encore Defendants argue that the claims against them must be dismissed because (1) the Amended Complaint does not allege any affirmative action on behalf of Encore, MRC or MCM that violated the FDCPA and (2) the alleged conduct was performed by Cohen and not the Encore Defendants. (Encore Defs. Mem. in Support at 3-4, 6.)

Throughout the Amended Complaint, plaintiff unhelpfully alleges that "defendants" or "defendant" engaged in the alleged conduct and consistently fails to differentiate the conduct performed by each entity. In particular, the Amended Complaint alleges that "[d]efendants printed and mailed" the April 1 Letter. (Am. Compl. ¶ 72.) Similarly, with respect to the Restraining Notice, plaintiff alleges that "[d]efendant," without identifying which defendant, served it on plaintiff's bank. (Am. Compl. ¶ 75.) Plaintiff, however, also alleges that the letters sent to plaintiff were the product of "[d]efendants' concerted efforts" and that "integrated or shared technologies including computer programs, mailing houses, and electronic databases" were used to produce the letters. (Am. Compl. ¶ 78.) Moreover, plaintiff relies on a

17

theory of vicarious liability to assert claims against the Encore Defendants.  (Pl. Response in

Opp. to the Encore Defs. Motion to Dismiss at 10-11.)  Plaintiff also alleges that each entity is a

"debt collector," as defined under the FDCPA, who is subject to liability under the FDCPA.

(Am. Compl. ¶¶ 8, 12, 15.)  As a direct claim against the Encore Defendants in particular,

plaintiff asserts that the they violated section 1692e(14) by "inform[ing] Cohen that Midland

Credit, rather than MRC Receivables Corp. was [plaintiff's] creditor . . . ."  (Am. Compl. ¶¶ 121,

123-24.)

　　　　　Accepting plaintiff's allegations as true, I cannot conclude that the Encore

Defendants were not involved in drafting the April 1 Letter or the Restraining Notice or that they

cannot be liable under a vicarious liability theory.  In order to impose liability under the FDCPA,

the Encore Defendants must be "debt collectors."  See e.g., Hess, 637 F.3d at 120.  The FDCPA

defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or

the mails in any business the principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another." 15 U.S.C. § 1692a(6).  The FDCPA excludes a corporate affiliate of a

debt collector from its definition of a "debt collector" if " [1] the affiliate collects debts only for

entities with which it is affiliated or related; and [2] the principal business of the affiliate is not

debt collection." Burns v. Bank of America, 655 F. Supp. 2d 240, 255 (S.D.N.Y. 2008) (quoting

Aubert v. Am. Gen. Fin., Inc., 137 F.3d 976, 978 (7th Cir. 1998); see also 15

U.S.C. § 1692a(6)(B) (excluding from its definition of a "debt collector" "any person while

acting as a debt collector for another person, both of whom are related by common ownership or

affiliated by corporate control, if the person acting as a debt collector does so only for persons to

whom it is so related or affiliated and if the principal business of such person is not the collection

18

of debts"). The FDCPA also "recognizes that one who acquires debt merely for collection
purposes is 'acting more like a debt collector' than a creditor; thus, the Act treats assignees of
debt 'as debt collectors if the debt sought to be collected was in default when acquired by the
assignee.' " Hernandez v. Midland Credit Management, Inc., 2007 WL 2874059, at *16-17
(N.D.Ill. Sep. 25, 2007) (quoting Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th
Cir. 2003)); see also 15 U.S.C. § 1692a(4) (excluding from the definition of "creditor" "any
person to the extent that he receives an assignment or transfer of a debt in default solely for the
purpose of facilitating collection of such debt for another."). Here, plaintiff alleges that the
Encore Defendants acquired the debt "after [the] obligation . . . was in default" and that all of
the Encore Defendants are primarily engaged in the collection of debt. (Am. Compl. ¶¶ 7, 11,
14, 72.) The facts alleged support the conclusion that these entities are "debt collectors" and the
Encore Defendants do not specifically argue otherwise. See Pollice, 225 F.3d at 403-04
(concluding that a defendant who was assigned a debt after default and whose principal purpose
was to collect defaulted debts was a "debt collector" under the FDCPA).

    The Amended Complaint alleges that MCM and Encore exercised material
control "over each aspect of" the collection process. (Am. Compl. ¶¶ 51, 60.) The Collection
Agreement directed the manner in which Cohen conducted its collection efforts. (Am. Compl.
¶¶ 46, 67.) The Collection Agreement also required Cohen to comply with the Midland Account
Handling Procedures and to complete daily reporting requirements regarding "communications
or attempted communications between the firms and consumers and/or others." (Am. Compl. ¶¶
47, 54.) Plaintiff also alleges that MRC acted "jointly and in concert" with MCM, Encore and
Cohen to collect plaintiff's debt and that "MRC is a wholly owned subsidiary of Midland
Portfolio Services, Inc., which is a wholly owned subsidiary of [MCM]." (Am. Compl. ¶¶ 10,

19

19.)  MCM also required Cohen to complete "MCM's Daily Invoicing Report[s]" that tracked

account activity and payments and to "maintain true, complete and accurate records . . . ." (Am.

Compl. ¶¶ 55, 58.)  With respect to Encore, plaintiff alleges that Encore's management

controlled "the day-to-day operations" of Cohen's efforts to collect "MRC's accounts on behalf

of MCM pursuant to the Collection Agreement[ ]."  (Am. Compl. ¶ 63.)

        Perhaps plaintiff will be unable to prove that each Encore Defendant participated

in producing the April 1 Letter and/or the Validation Notice, or that each entity exercised control

over Cohen in producing the letters, but plaintiff has alleged enough facts to plausibly state

claims for relief that the Encore Defendants are liable under the FDCPA.  Thus, to the extent

plaintiff has stated a violation of the FDCPA arising from the April 1 Letter and the Validation

Notice, plaintiff's claims against the Encore Defendants for their involvement in producing these

letters also survive at this stage of the proceeding.

THE ENCORE DEFENDANTS' REQUESTS FOR RULE 11 SANCTIONS AND
ATTORNEYS' FEES ARE DENIED

        The Encore Defendants request that the Court sanction plaintiff pursuant to Rule

11, Fed. R. Civ. P.  (Encore Defs. Motion to Dismiss at 9.)  Rule 11(c)(2) requires that "[a]

motion for sanctions must be made separately from any other motion . . . ."  By raising their

request for sanctions in their motion to dismiss, the Encore Defendants have failed to comply

with Rule 11.  (Docket # 25.)  Accordingly, their request is denied.  The Encore Defendants also

request an award of attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3).  (Encore Defs. Motion

to Dismiss at 11.)  This request is premature and therefore denied.  Of course, if plaintiff

continues her claims in the face of incontrovertible evidence inconsistent with a claim against the

Encore Defendants, the circumstances at that juncture may support sanctions.

CONCLUSION

For the reasons explained above, Cohen's motion to dismiss is granted in part and denied in part. (Docket # 20.)   The Encore Defendant's motion to dismiss is also granted in part and denied in part. (Docket # 25.)    A Case Management Conference is scheduled for October 7, 2011 at 12:30 p.m.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        September 7, 2011

21